UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- X

THE ESTATE OF YARON UNGAR by and through its
Administrator, DAVID STRACHMAN; DVIR UNGAR,
minor, by his guardians and next friends, YISHAI
UNGAR, minor, by his guardians and next friends,
PROFESSOR MEIR UNGAR, JUDITH UNGAR,
individually and in their capacity as legal guardians of
Plaintiffs DVIR UNGAR and YISHAI UNGAR; RABBI
URI DASBERG, and JUDITH DASBERG, in their capacity
as legal guardians of Plaintiffs DVIR UNGAR and
YISHAI UNGAR; AMICHAI UNGAR; DAFNA UNGAR;
and MICHAL COHEN,

Civil No: _____ / 05

05 CV 7765 (NRB)(AJP)

                              Plaintiffs,

                                                                    **COMPLAINT**

                    -against-


ORASCOM TELECOM HOLDING S.A.E. (a/k/a
"Orascom Telecom" a/k/a "OTH") and
THE PALESTINE INVESTMENT FUND (a/k/a
"Palestinian Investment Fund" a/k/a "Sharekat
Sundouk al-Istithmar al-Filistinee"),

                              Defendants.

-------------------------------------------------------------------------- X


            PLAINTIFFS, complaining of the Defendants, by their attorneys,

JAROSLAWICZ & JAROS, allege for their complaint as follows:

## NATURE OF PROCEEDING AND RELIEF REQUESTED

1.    Plaintiffs hold a final judgment in excess of $116,000,000 against the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") that was entered by the United States District Court for the District of Rhode Island on July 13, 2004, and thereafter registered in this Court pursuant to 28 U.S.C. § 1963 as Docket No. 18 MS 0302.

2.    Upon information and belief, Defendant ORASCOM TELECOM HOLDING S.A.E. owes debts to judgment debtor PA and/or holds money and/or other property which belongs to the PA and/or in which the PA has an interest, some of which debts, money and/or property are nominally owed and payable to and/or titled under the name of THE PALESTINE INVESTMENT FUND.

3.    Plaintiffs therefore bring this action for a judgment of turnover against Defendant ORASCOM TELECOM HOLDING S.A.E., in which THE PALESTINE INVESTMENT FUND has also been named as a Defendant.

4.    Plaintiffs clarify that they were not required to name THE PALESTINE INVESTMENT FUND as a party to, or provide it notice of, this proceeding, because (as explained below) THE PALESTINE INVESTMENT FUND has no legal existence separate from judgment-debtor PA. Moreover, alternatively, even if THE PALESTINE INVESTMENT FUND is found to be an entity legally separate from the PA, its status would (at most) be that of a putatively interested party that could seek to intervene to assert claims. Plaintiffs recognize, however, that for its own protection Defendant ORASCOM TELECOM HOLDING S.A.E. would likely seek to implead THE PALESTINE INVESTMENT FUND, which procedure would unnecessarily delay this action. Thus, solely in order to streamline and expedite this action, Plaintiffs have named "THE PALESTINE INVESTMENT FUND" as a defendant.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 18 U.S.C. §§ 2333 and 2338, 28 U.S.C. §§ 1331 and 1963, the Court's ancillary enforcement jurisdiction and the Court's equity powers.

6.      This Court has jurisdiction over Defendants pursuant to Fed.R.Civ.P. 4(k)(1) and/or 4(k)(2).

7.      The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) and (d).

## THE PARTIES

8.      Plaintiff THE ESTATE OF YARON UNGAR, which is represented in this action by a court-appointed administrator, attorney David Strachman, holds a judgment against the PA and the PLO, jointly and severally, in the amount of $2,932,158.00.

9.      Plaintiffs DVIR UNGAR and YISHAI UNGAR, minors who bring this action through their grandparents and legal guardians plaintiffs Meir Ungar, Judith Ungar, Uri Dasberg and Judith Dasberg, each hold a judgment against the PA and the PLO, jointly and severally, in the amount of $30,488,482.50.

10.     Plaintiffs PROFESSOR MEIR UNGAR and JUDITH UNGAR, who bring this action individually and in their capacity as legal guardians of plaintiffs Dvir and Yishai Ungar, each hold a judgment against the PA and the PLO, jointly and severally, in the amount of $15,000,000.00.

11.     Plaintiffs RABBI URI DASBERG and JUDITH DASBERG bring this action in their capacity as legal guardians of plaintiffs Dvir and Yishai Ungar.

12.    Plaintiffs AMICHAI UNGAR, DAFNA UNGAR and MICHAL COHEN each hold a judgment against the PA and the PLO, jointly and severally, in the amount of $7,500,000.00.

13.    Upon information and belief, Defendant ORASCOM TELECOM HOLDING S.A.E (a/k/a "Orascom Telecom" a/k/a "OTH") (hereinafter "ORASCOM") is a corporation organized and existing pursuant to the laws of the State of Egypt.

14.    Upon information and belief, ORASCOM, itself and/or through its agents, transacts extensive business in the State of New York and throughout the United States.

15.    Upon information and belief, ORASCOM, itself and/or through its agents, maintains assets within the State of New York and elsewhere in the United States.

16.    Upon information and belief, commercial and investment assets owned by judgment debtor PA are nominally titled under the name THE PALESTINE INVESTMENT FUND ("PIF") and PIF is an alias and/or shell fund of the PA.

17.    Upon information and belief, the PA, itself and/or through its agents, transacts extensive business under the name "THE PALESTINE INVESTMENT FUND" in the State of New York and throughout the United States.

18.    Upon information and belief, alternatively if the PIF is found to have cognizable legal personality separate from the PA, the PIF, itself and/or through its agents, transacts extensive business in the State of New York and throughout the United States.

19.    Upon information and belief, the PA, itself and/or through its agents, maintains assets within the State of New York and elsewhere in the United States that are nominally titled under the name THE PALESTINE INVESTMENT FUND.

## STATEMENT OF FACTS

### A.     Background

20.     Plaintiffs are the orphaned children, parents, siblings and administrator of the Estate of United States citizen Yaron Ungar, who was murdered, along with his pregnant wife Efrat, in a terrorist machine-gun attack on June 9, 1996 in Israel.

21.     A 25 year-old New York native, Yaron was a schoolteacher studying for rabbinical ordination when he was murdered.

22.     The Ungars were ambushed while returning from a wedding.

23.     Efrat shielded their ten month-old son Yishai from the bullets and he survived the attack.

24.     The Ungars' other son Dvir, then two years old, was not in the vehicle.

25.     In March 2000, the Ungar family filed suit against the Palestinian Authority, the Palestine Liberation Organization, and other defendants, in the United States District Court for the District of Rhode Island under the Antiterrorism Act ("ATA") 18 U.S.C. § 2331 et seq. *Ungar et al. v. The Palestinian Authority et al.*, Civil Action 00-105L (D.R.I.).

26.     Section 2333(a) of the ATA creates a federal cause of action for a U.S. national, or his estate, survivors and heirs, injured by reason of an act of "international terrorism" as defined in § 2331.

27.     Section 2338 of the ATA provides that the "district courts of the United States shall have exclusive jurisdiction over an action brought under" § 2333.

28.     On July 13, 2004, the United States District Court in Rhode Island entered final judgment for the Plaintiffs and against the PA and PLO, jointly and severally, in the amount of $116,409,123.00 in damages, and for attorney's fees in the amount of $11,925.00 against the PA and $6,345.00 against PLO, and on March 31, 2005, the Court of Appeals for the

First Circuit affirmed the judgment of the Rhode Island District Court. *Ungar v. Palestinian Authority*, 325 F.Supp.2d 15 (D.R.I. 2004) *aff'd* 402 F.3d 274 (1st Cir. 2005).

29.    On May 5, 2005, the United States District Court for the District of Rhode Island entered an order finding that

> (i) Plaintiffs have presented evidence that Defendants do not intend to honor the judgment of the Court in this action, that Defendants have recently liquidated assets comprising a significant part of their overall investment portfolio, and that persons holding Defendants' assets in the United States are in the process of returning those assets to Defendants.
>
> (ii) Defendants are foreign entities and the dissipation of their U.S.-based assets is liable to render satisfaction of the judgment entered by this Court impossible. That judgment is intended to compensate Plaintiffs for the murder of their decedent, and Plaintiffs' inability to satisfy the judgment and receive the compensation due to them would therefore cause Plaintiffs severe and irreparable injury.

Injunction, May 5, 2005, *Ungar v. Palestinian Authority*, Civil Action 00-105L (D.R.I.).

30.    The PA and PLO have refused to satisfy Plaintiffs' judgment, and have expressly informed the Ungars' trial counsel that they "will never pay" the judgment.

31.    Plaintiffs have served several deposition notices seeking to depose officials of the PA and PLO with knowledge of the investments and assets of the PA and PLO, but the PA and PLO have refused to produce their officials for deposition.

32.    The PA and the PLO are refusing to pay the Ungars' judgment because they do not recognize the authority of this Court or of any other court of the United States.

33.    On July 15, 2005, Judge Marrero of this Court ordered the PA and PLO to pay discovery sanctions in the amount of some $19,000 previously imposed by the court in *Knox v. Palestine Liberation Organization*, Civ. No. 4466 (VM), and to answer the complaint in

that action, by no later than August 15, 2005. In response to that order, the PLO and PA sent a

letter to Judge Marrero on August 15, 2005, stating that:

> [T]he defendants have instructed counsel to present only their position that U.S. courts have no jurisdiction over them and not to answer on the merits . . .
>
> This same position, that the Court has no jurisdiction over them, applies to the order for defendants to pay sanctions.

Letter from Ramsey Clark to Marrero, J., August 15, 2005, *Knox v. Palestine Liberation Organization*, Civ. No. 4466 (VM).

34.    To date, Plaintiffs have not received a single cent of their judgment.

35.    Plaintiffs have registered their judgment against the PA and PLO in this Court pursuant to 28 U.S.C. § 1963 as Docket No. 18 MS 0302.

36.    Pursuant to 28 U.S.C. § 1963, Plaintiffs' judgment now has "the same effect as a judgment of" this Court "and may be enforced in like manner."

37.    Upon    information    and    belief,    Defendant    ORASCOM    is    a telecommunications company incorporated and headquartered in Egypt.

38.    Upon information and belief, Defendant ORASCOM conducts extensive business and commercial activities throughout the United States and the State of New York, and holds assets in the State of New York and elsewhere in United States.

**B.    Defendant ORASCOM is Indebted to and Holds Assets of Judgment-Debtor PA**

39.    Upon information and belief, as of January 1, 2003, the PA made, held and owned the following direct investments in Defendant ORASCOM (collectively hereinafter: "Direct Investments"):

a.    On December 10, 2002, the PA purchased 10 million shares of Defendant ORASCOM; and

      b.     As of January 1, 2003, the PA owned 2 million Global Depository Receipts ("GDR") shares of Defendant ORASCOM traded on the London stock exchange; and

      c.     On an unknown date or dates prior to January 1, 2003, the PA transferred approximately $107,500,000.00 to Defendant ORASCOM as an investment, in expectation of an increase in shareholder capital which did not take place.

    40.    Upon information and belief, the Direct Investments have not been repaid to the PA, and Defendant ORASCOM remains indebted to the PA for the amount of the Direct Investments.

    41.    Upon information and belief, Orascom Telecom Algeria (a/k/a "Djezzy") (hereinafter: "OTA") and Orascom Telecom Tunisia (a/k/a "Tunisiana") (hereinafter: "OTT") are telecommunication companies.

    42.    Upon information and belief Defendant ORASCOM owns a majority ownership interest in OTT and OTA.

    43.    Upon information and belief, on an unknown date or dates, the PA acquired direct and/or indirect stakes and/or shares and/or other interests in OTA and OTT (collectively hereinafter: "PA's OTA and OTT Stakes").

    44.    Upon information and belief, on an unknown date or dates, Defendant ORASCOM agreed to purchase the PA's OTA and OTT Stakes for an unknown sum totaling hundreds of millions of dollars.

    45.    Upon information and belief, on an unknown date or dates in late 2004 and/or early 2005, Defendant ORASCOM purchased and acquired the PA's OTA and OTT

Stakes for an unknown sum totaling hundreds of millions of dollars (hereinafter: "Defendant ORASCOM's Acquisition of the PA's OTA and OTT Stakes").

46.    Upon information and belief, as a consequence and result of, and as consideration for, Defendant ORASCOM's Acquisition of the PA's OTA and OTT Stakes, Defendant ORASCOM is indebted to and owes the PA at least tens and probably hundreds of millions of dollars.

47.    Upon information and belief, the PA carried out all of the above-described transactions and investments in its own name and/or under various aliases, and/or under the names of various shell funds, including without limitation "The Palestinian Commercial Services Corporation" (a/k/a "Palestine Commercial Services Company") ("PCSC") and "The Palestine Investment Fund" ("PIF") (collectively hereinafter: "Aliases and Shell Funds")

48.    Upon information and belief, all or nearly all of the Aliases and Shell Funds including the PCSC and PIF were created and are controlled and/or directed by Mohammed Rashid (a/k/a Mohammed Rachid a/k/a Khaled Salaam) (hereinafter: "Rashid").

49.    Upon information and belief, Rashid has managed the covert assets and investments of the PA and PLO for decades.

50.    Plaintiffs have served the PA and PLO with a notice of deposition requiring the PA and PLO to produce Rashid to provide deposition testimony regarding, *inter alia,* the investments and assets of the PA and PLO held by and/or titled to the PIF, the PCSC and the other Aliases and Shell Funds, but the PA and PLO have refuse to produce Rashid and have informed Plaintiffs that they will not do so.

51.    Upon information and belief, the PA created and uses the Aliases and Shell Funds to shield the financial activities and assets of the PA from law-enforcement and tax authorities and from creditors such as the instant Plaintiffs.

52.    Upon information and belief, the Aliases and Shell Funds are aliases and pseudonyms for the PA and have no legal personality or corporate identity separate from the PA.

53.    Upon information and belief, alternatively, any separate legal personality and/or or corporate identity formally or nominally enjoyed and/or claimed by any of the Aliases and Shell Funds is artificial and/or fraudulent and so not legally cognizable.

54.    Upon information and belief, alternatively, any separate legal personality and/or or corporate identity formally or nominally enjoyed and/or claimed by any of the Aliases and Shell Funds is intended solely to shield the financial activities and assets of the PA from law-enforcement and tax authorities and from creditors and so not legally cognizable.

55.    Upon information and belief, alternatively, any of the Aliases and Shell Funds that have cognizable legal personality or corporate identity separate from the PA, are shell entities wholly-owned and controlled by the PA with no purpose or business other than to act as investment vehicles for the PA.

56.    Upon information and belief, alternatively, any of the Aliases and Shell Funds that have cognizable legal personality or corporate identity separate from the PA, are agents and/or trustees and/or fiduciaries of the PA.

57.    Upon information and belief, alternatively, any of the Aliases and Shell Funds that have cognizable legal personality or corporate identity separate from the PA, constitute and serve as constructive and/or resulting trusts for the PA.

58.    Upon information and belief, the PIF was capitalized by the PA without consideration.

59.    Upon information and belief, all assets and property nominally titled to and/or owned by the PIF were conveyed to the PIF by the PA without fair consideration,

during the period that the PA was a defendant in the underlying action for money damages in the United States District Court in Rhode Island.

60. Upon information and belief, none of the Aliases and Shell Funds, whether or not they have cognizable legal personality or corporate identity separate from the PA, own any property or assets of their own.

61. Upon information and belief, any and all assets and property of any type designated or titled to, or held in, the name of the Aliases and Shell Funds, are legally, beneficially and equitably owned by the PA.

62. Upon information and belief, any and all debts owed and/or due to, or payable in the name of, the Aliases and Shell Funds, are legally, beneficially and equitably owed, due and payable to the PA.

63. In at least ten sworn affidavits submitted by the PA in civil proceedings pending in Israeli courts (copies of which are in Plaintiffs' possession) the PA has identified the Direct Investments in Defendant ORASCOM and the PA's OTA and OTT Stakes—specifically by name—as assets owned by the PA and available for the satisfaction of judgments against the PA (hereinafter: "PA Affidavits in the Israeli Proceedings").

64. The PA submitted the PA Affidavits in the Israeli Proceedings in support of successful motions filed by the PA in the Israeli courts to vacate or reduce the amount of prejudgment attachments that had been imposed on the PA by the Israeli courts in those proceedings.

65. The PA is therefore judicially estopped from contesting or opposing the instant action.

66.    Additionally and/or alternatively the PA Affidavits in the Israeli Proceedings constitute admissions dispositive of the instant action. [1]

67.    Therefore, any amounts nominally owed, due or and/or payable from Defendant ORASCOM to any of the Aliases and Shell Funds are legally, beneficially and equitably owed, due and payable to the PA, and any money or other property held by Defendant ORASCOM titled to any of the Aliases and Shell Funds, or in which any of the Aliases and Shell Funds claim an interest, constitute money, property and/or interests legally, beneficially and equitably owned by the PA.

## AS AND FOR PLAINTIFFS' FIRST CLAIM FOR RELIEF

## TURNOVER

## UNDER A CREDITOR'S BILL/SUPPLEMENTAL BILL

68.    Plaintiffs repeat and reallege each of the foregoing allegations with the same force and effect as if they were more fully set forth herein.

69.    Plaintiffs are judgment-creditors of the PA.

70.    The PA is a foreign entity.

---

[1] The PIF/PA are hereby cautioned that if they file papers in this matter contradicting the sworn affidavits filed by the PA in the Israeli proceedings, Plaintiffs will (1) seek all available sanctions under Fed.R.Civ.P. 11 and other relevant provisions; and (2) deliver copies of such contradictory papers to the chambers of the Israeli judges before whom the PA filed the sworn affidavits.

The Ungars, who have suffered through five years of contumacious, deceptive, and dilatory litigation conduct at the hands of the PA and PLO, will tolerate no more, and neither should the Court. *See Ungar,* 325 F. Supp. 2d at 62 (finding that the PA and PLO took "deliberate actions to delay the completion of this litigation" and "sought to delay these proceedings as long as possible," and imposing sanctions for their bad-faith conduct). *See also, Knox v. Palestine Liberation Organization,* 229 F.R.D. 65 (S.D.N.Y. 2005) (finding that the PLO and PA "generat[ed] more than a year's delay and thousands of dollars in legal expenses" warning that the "Court will not tolerate such practices in the future, and will consider any unexplained repetition of them sufficient grounds for imposition of sanctions on Defendants' counsel personally as well as on Defendants" and imposing sanctions of estoppel and attorneys fees).

71.    The United States District Court for the District of Rhode Island has found that the PA does not intend to honor Plaintiffs' judgment, that the PA has recently liquidated assets comprising a significant part of its overall investment portfolio, that Plaintiffs' judgment against the PA is intended to compensate Plaintiffs for the murder of their decedent, and that Plaintiffs' inability to satisfy the judgment and receive the compensation due to them would therefore cause Plaintiffs severe and irreparable injury.

72.    The PA has, moreover, expressly informed the Plaintiffs that it will never honor their judgment.

73.    The PA has openly refused to produce its officials, including Rashid, to provide deposition testimony regarding the PA's investments and assets.

74.    To date, Plaintiffs have not received a single cent of their judgment.

75.    The PA has notified this Court that it does not recognize the jurisdiction of this or any other court of the United States over the PA.

76.    Defendant ORASCOM is indebted to judgment-debtor PA.

77.    Defendant ORASCOM holds money and/or other property belonging to judgment-debtor PA and/or in which the PA has an interest.

78.    Plaintiffs are therefore entitled to bring the instant action as a creditor's bill and/or a supplemental bill under the Court's equity powers, and to entry of an order and judgment directing Defendant ORASCOM to turnover and pay to Plaintiffs, to the extent of the full amount of Plaintiffs' judgment against the PA: (a) all debts owed by Defendant ORASCOM to the PA, however titled; and (b) all money and/or other property of the PA, or in which the PA has an interest, however titled, in the control or possession of Defendant ORASCOM.

## AS AND FOR PLAINTIFFS' SECOND CLAIM FOR RELIEF

## TURNOVER

## PURSUANT TO CPLR §§ 5225 AND/OR 5227

79.     Plaintiffs repeat and reallege each of the foregoing allegations with the same force and effect as if they were more fully set forth herein.

80.     Plaintiffs are judgment-creditors of the PA.

81.     Defendant ORASCOM is indebted to judgment-debtor PA.

82.     Defendant ORASCOM holds money and/or other property belonging to judgment-debtor PA and/or in which the PA has an interest.

83.     Plaintiffs are therefore entitled to an order and judgment pursuant to New York State Civil Practice Law and Rules ("CPLR") §§ 5225 and/or CPPR 5227 ordering Defendant ORASCOM to turnover and pay to Plaintiffs, to the extent of the full amount of Plaintiffs' judgment against the PA: (a) all sums owed by Defendant ORASCOM to the PA, however titled; and (b) all money and/or other property of the PA, or in which the PA has an interest, however titled, in the control or possession of Defendant ORASCOM.

**WHEREFORE**, the Plaintiffs demand an order and judgment against Defendants:

(i) Ordering Defendant ORASCOM to turnover and pay to Plaintiffs, up to the full amount of Plaintiffs' judgment against the PA and the statutory post-judgment interest thereon:

(a)     All debts owed, due and/or payable by Defendant ORASCOM to the PA that are titled and/or payable in the names of the PA or the PIF, including without limitation all debts owed, due or payable as a consequence and result of, and/or as consideration for, the Direct Investments and

- 14 -

Defendant ORASCOM's Acquisition of the PA's OTA and OTT Stakes, as defined herein; and

(b)    All money and/or other property that is titled in the names of the PA or the PIF, or in which the PA or the PIF has a titular interest, in the control or possession of Defendant ORASCOM; and

(ii)  Awarding Plaintiffs their costs, expenses, disbursements and attorney's fees in connection with this proceeding, together with such other and further relief that this Court deems just, proper and equitable.

Dated: New York, New York
       September 2, 2005

Yours,

JAROSLAWICZ & JAROS, ESQS.
*Attorneys for the plaintiffs*

by: _____
       David Tolchin (1889)
       Robert J. Tolchin (3713)
     150 William Street, 19th Floor
     New York, New York 10038
     (212) 227-2780

David Strachman, Esq.
MCINTYRE, TATE, LYNCH & HOLT, LLP
*Attorneys for the plaintiffs*
321 South Main Street, Suite 400
Providence, Rhode Island 02903
(401) 351-7700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

THE ESTATE OF YARON UNGAR by and through its
Administrator, DAVID STRACHMAN; DVIR UNGAR, minor,
by his guardians and next friends, YISHAI UNGAR, minor, by
his guardians and next friends, PROFESSOR MEIR UNGAR,
JUDITH UNGAR, individually and in their capacity as legal
guardians of Plaintiffs DVIR UNGAR and YISHAI UNGAR;
RABBI URI DASBERG, and JUDITH DASBERG, in their
capacity as legal guardians of Plaintiffs DVIR UNGAR and
YISHAI UNGAR; AMICHAI UNGAR; DAFNA UNGAR; and
MICHAL COHEN,

Civil No: _____ / 05

                            Plaintiffs,

                   -against-

ORASCOM TELECOM HOLDING S.A.E. (a/k/a "Orascom
Telecom" a/k/a "OTH") and
THE PALESTINE INVESTMENT FUND (a/k/a "Palestinian
Investment Fund" a/k/a "Sharekat Sundouk al-Istithmar al-
Filistinee"),

                            Defendants.

---

## COMPLAINT

---

**Law Offices of**
**JAROSLAWICZ & JAROS**
*Attorneys for plaintiff*
150 William Street - 19th Floor
New York, New York 10038
(212) 227-2780

by: _David Tolchin_ 1887