**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| The Estate of Yaron Ungar, et al., | |
| Plaintiffs, | Case No. 05-CV-7765 (CM) |
| v. | |
| Orascom Telecom Holding S.A.E., et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**ORASCOM TELECOM HOLDING S.A.E.'S MOTION**
**TO DISMISS THE COMPLAINT IN ITS ENTIRETY**

**WHITE & CASE** LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600

December 8, 2005                    *Counsel for Orascom Telecom Holding S.A.E.*

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................2

      A.    Background ...............................................................................................2

      B.    Prior Proceedings Before This Court....................................................2

            1.    *Estate of Ungar v. Palestinian Auth.*, No. 18 MS 0302, 2005 WL 2620588 (S.D.N.Y. Oct. 11, 2005) *("Ungar I")* ...........................2

            2.    *Estate of Ungar v. Palestinian Auth.*, No. 18 MS 0302, 2005 WL 3005810 (S.D.N.Y. Nov. 7, 2005) ("*Ungar II*").........................3

            3.    Adjournment of This Civil Action Pending Disposition of *Ungar I* and *Ungar II* ...............................................................................5

ARGUMENT.....................................................................................................................6

I.    THIS COURT'S PRIOR RULING THAT IT LACKS PERSONAL JURISDICTION OVER ORASCOM HAS PRECLUSIVE EFFECT UNDER THE COLLATERAL ESTOPPEL DOCTRINE...............................................................................6

      A.    This Court Conclusively Held That It Lacks Personal Jurisdiction Over Orascom in *Ungar II*.........................................................................6

      B.    This Court's Ruling In *Ungar II* Collaterally Estops Plaintiffs From Relitigating the Personal Jurisdiction Issue Here .................................9

II.    THIS COURT LACKS SUBJECT-MATTER JURISDICTION .....................................11

      A.    The ATA Cannot Serve As The Basis For Subject-Matter Jurisdiction In This Case ..............................................................................................12

      B.    This Court Lacks Ancillary Enforcement Jurisdiction.........................12

      C.    The Federal Registration Statute, 28 U.S.C. § 1963, Does Not Confer Subject-Matter Jurisdiction In This Case .............................................16

III.    THIS COURT LACKS PERSONAL JURISDICTION OVER ORASCOM .................17

IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR A CREDITOR'S BILL OR FOR
       TURNOVER ........................................................................................................ 18

       A.    Plaintiffs' Claim For A Creditor's Bill Should Be Dismissed ............................ 18

       B.    Plaintiffs' Statutory Claim For Turnover Should Be Dismissed .......................... 20

V.     THIS COURT LACKS JURISDICTION OVER THE ALLEGED ASSETS .................. 21

CONCLUSION ................................................................................................................. 23

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                    **PAGE(S)**

*In re "Agent Orange" Prod. Liab. Litig.*, 506 F. Supp. 737 (E.D.N.Y. 1979),
 *rev'd on other grounds*, 635 F.2d 987 (2d Cir. 1980) ......................................................15

*Algonquin Power Corp. v. Trafalgar Power, Inc.*, No. CivA5:00cvl246,
 2000 WL 33963085 (N.D.N.Y. Nov. 8, 2000) ..................................................................20

*Bourget v. Gov't Employees Ins. Co.*, 287 F. Supp. 108 (D. Conn. 1968)............................. 18-19

*\*Epperson v. Entm't Express, Inc.*, 242 F.3d 100 (2d Cir. 2001)................................. 9-10, 14, 15

*Estate of Ungar v. Palestinian Auth.*, 325 F. Supp. 2d 15 (D.R.I. 2004),
 *aff'd*, 402 F.3d 274 (1st Cir. 2005), *cert. denied*, No. 05-510,
 2005 WL 3144180 (Nov. 28, 2005)....................................................................................2

*Estate of Ungar v. Palestinian Auth.*, No. 18 MS 0302, 2005 WL 2620588
 (S.D.N.Y. Oct. 11, 2005) ..............................................................................................2, 3

*\*Estate of Ungar v. Palestinian Auth.*, No. 18 MS 0302, 2005 WL 3005810
 (S.D.N.Y. Nov. 7, 2005) ..........................................................................................*passim*

*Fidelity Partners, Inc. v. Philippine Exp. and Foreign Loan Guar. Corp.*,
 921 F. Supp. 1113 (S.D.N.Y. 1996) ...............................................................................21

*Flair Broad. Corp. v. Powers*, No. 89 Civ.2528, 1998 WL 247521
 (S.D.N.Y. May 15, 1998) ...............................................................................................11

*Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38 (2d Cir. 1986) ...........................................................10

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
 527 U.S. 308, 119 S. Ct. 1961 (1961)................................................................... 18, 19-20

*\*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408,
 104 S. Ct. 1868 (1984)..............................................................................................8, 9, 17

*Hunter v. Youthstream Media Networks, Inc.*, 241 F. Supp. 52
 (D. Mass. 2002) .............................................................................................................18

*JSC Foreign Econ. Assoc. v. Int'l Dev. & Trade Servs., Inc.*,
 295 F. Supp. 2d 366 (S.D.N.Y. 2003) .............................................................................20

*Kavowras v. New York Times Co.*, 328 F.3d 50 (2d Cir. 2003) ......................................................6

*\*Koehler v. Bank of Bermuda*, No. M18-302, 2005 WL 551115
 (S.D.N.Y. Mar. 9, 2005) .................................................................................................21

*Langella v. Bush*, 306 F. Supp. 2d 459 (S.D.N.Y. 2004) ............................................................10

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039
  (2d Cir. 1990) .......................................................................................................8, 17

*Manway Constr. Co., Inc. v. Housing Auth. of the City of Hartford*,
  711 F.2d 501 (2d Cir. 1983) ...........................................................................14

*Mende v. Milestone Tech., Inc.*, 269 F. Supp. 246 (S.D.N.Y. 2003) ........................................7-8

*Mones v. Commercial Bank of Kuwait, S.A.*, No. 18 Misc. 0302,
  2005 WL 1653930 (S.D.N.Y. July 12, 2005) .............................................. 21-22

*Nat'l Westminster Bank U.S.A. v. Cheng*, 751 F. Supp. 1158
  (S.D.N.Y. 1985) .................................................................................................15

*\*Nordic Bank PLC v. Trend Group, LTD*, 619 F. Supp. 542 (S.D.N.Y. 1985).........................7, 17

*Oakes v. Horizon Fin., S.A.*, 259 F.3d 1315 (11th Cir. 2001) .......................................................16

*\*Peacock v. Thomas*, 516 U.S. 349, 116 S. Ct. 862 (1996)....................................................*passim*

*Phoenician Trading Partners LP v. Iseson*, No. CV-04-2178,
  2004 WL 3152394 (E.D.N.Y. Dec. 11, 2004) ...................................... 20, 20-21

*Sansom Comm. v. Cook*, 735 F.2d 1535 (3d Cir. 1984) ...................................................... 15-16

*Sara Lee Corp. v. Gregg*, No. 1:02 CV 00195, 2002 WL 1925703
  (M.D.N.C. Aug. 15, 2002) ................................................................................21

*Sephus v. Gozelski*, 864 F.2d 1546 (11th Cir. 1989) ...................................................................16

*Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 89 S. Ct. 935 (1969).....................................6

*\*In re Ski Train Fire*, No. 1428 01 Civ. 7342, 2003 WL 1807148
  (S.D.N.Y. Apr. 4, 2003)................................................................................9, 17

*Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217
  (S.D.N.Y. 2003) .................................................................................................12

*Squeez-A-Purse Corp. v. Stiller*, 31 F.R.D. 261
  (S.D.N.Y. 1962) .................................................................................................16

*Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724 (2d Cir. 1998) ..............................11

*United States v. Mr. Hamburg Bronx Corp.*, 228 F. Supp. 115
  (S.D.N.Y. 1964) .................................................................................................19

*Williams v. Pfeffer*, 117 F. Supp. 2d 331 (S.D.N.Y. 2000) ................................................... 14-15

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100,
    89 S. Ct. 1562 (1969) ............................................................................................20


**STATE CASES**

*Bergdorf Goodman, Inc. v. Marine Midland bank*, 97 Misc. 2d 311,
    411 N.Y.S.2d 490 (N.Y. Civ. Ct. 1978) .........................................................21

*Oil City Petroleum Co., Inc. v. Fabac Realty Corp.*, 70 A.D.2d 859,
    418 N.Y.S.2d 51 (N.Y. App. Div. 1979) ........................................................21

*Peninsula Nat'l Bank v. Cincotti Constr. Co.*, 49 N.Y.S. 2d 936
    (N.Y. Sup. Ct. 1944), *aff'd*, 268 A.D. 976, 52 N.Y.S. 568
    (N.Y. App. Div. 1944) ....................................................................................19


**FEDERAL STATUTES**

18 U.S.C. §§  2333, 2338 ..........................................................................................2, 11

28 U.S.C. § 1331 .......................................................................................................11, 12

28 U.S.C. § 1963 .......................................................................................2, 11, 16, 17


**STATE STATUTES**

N.Y. C.P.L.R. §§ 301 (McKinney 1997) ........................................................ 4-5, 8, 10

N.Y. C.P.L.R. §§ 5222 (McKinney 1997) ...................................................................2

N.Y. C.P.L.R. §§ 5225, 5227 (McKinney 1997) ...............................................*passim*

N.Y. C.P.L.R. § 5402 (McKinney 1997) .....................................................................2


**TREATISE**

21 Am. Jur. 2d *Creditors' Bills* § 69 (1998)  ............................................................19

Orascom Telecom Holding S.A.E. ("Orascom"), an Egyptian corporation operating in the Middle East, Africa and South Asia, appears specially, through counsel, and respectfully submits this memorandum of law in support of its motion to dismiss the Complaint in its entirety with prejudice. Orascom is not alleged to have engaged in any wrongdoing in connection with the tragic murders of Yaron and Efrat Ungar. Orascom is merely alleged to possess money, property or debt owing to Defendant Palestine Investment Fund ("PIF"), which in turn is alleged to be an "alias" or "shell" of the Palestinian Authority ("PA"), one of Plaintiffs' judgment debtors. To Orascom's knowledge, no court has held that the PIF is in fact or in law an "alias" or "shell" of the PA.

In this action, Plaintiffs seek to compel Orascom, a purported third-party garnishee, to deliver the alleged money, property or debt owing to Defendant PIF to Plaintiffs pursuant to the equitable remedies of a creditor's bill or supplemental bill or, alternatively, through the turnover provisions of N.Y. C.P.L.R. §§ 5225 and 5227. Orascom hereby moves to dismiss the Complaint on a number of jurisdictional and other grounds. As an initial matter, however, Orascom submits that the Complaint should be dismissed outright because this Court's prior ruling in the related case of *Estate of Ungar v. Palestinian Authority*, No. 18 MS 0302, 2005 WL 3005810 (S.D.N.Y. Nov. 7, 2005) — in which this Court conclusively held that it lacks personal jurisdiction over Orascom — has preclusive effect here under the doctrine of collateral estoppel. The Complaint also should be dismissed in its entirety (i) for lack of subject-matter jurisdiction, (ii) for lack of personal jurisdiction over Orascom (separate and apart from collateral estoppel), (iii) because Plaintiffs have failed to state a claim for equitable relief under a creditor's bill or supplemental bill or, alternatively, pursuant to N.Y. C.P.L.R. §§ 5225 and 5227, and (iv) because this Court lacks jurisdiction over the alleged money, property or debt.

## INTRODUCTION

### A.    Background

Plaintiffs hold a final judgment against two judgment debtors, the PA and the Palestine Liberation Organization ("PLO").  That judgment was entered by the United States District Court for the District of Rhode Island on July 13, 2004 in an action brought under the Anti-Terrorism Act ("ATA"), 18 U.S.C. §§ 2333, 2338.  *See Estate of Ungar v. Palestinian Auth.*, 325 F. Supp. 2d 15 (D.R.I. 2004), *aff'd*, 402 F.3d 274 (1st Cir. 2005), *cert. denied*, No. 05-510, 2005 WL 3144180 (Nov. 28, 2005).  Plaintiffs registered the final judgment in this district pursuant to 28 U.S.C. § 1963 under Miscellaneous Docket No. 18 MS 0302, and in the New York Supreme Court pursuant to N.Y. C.P.L.R. § 5402(a).

### B.    Prior Proceedings Before This Court

#### 1.    *Estate of Ungar v. Palestinian Auth.*, No. 18 MS 0302, 2005 WL 2620588 (S.D.N.Y. Oct. 11, 2005) ("*Ungar I*")

Prior to initiating this federal enforcement action, Plaintiffs brought enforcement proceedings against Orascom in New York State Court.  A Turnover Petition pursuant to N.Y. C.P.L.R. §§ 5225 and 5227 (dated June 9, 2005 and filed July 21, 2005) and an unsigned Restraining Notice pursuant to N.Y. C.P.L.R. § 5222 (dated June 10, 2005) were delivered to Mr. Khaled Bichara, an Orascom board member, on June 14, 2005, when he was in New York City to appear at an unrelated judicial proceeding.  Along with these state-court papers, Plaintiffs delivered to Mr. Bichara two federal nonparty subpoenas issued out of this Court under Miscellaneous Docket No. 18 MS 0302, one directed to Orascom and the other directed to Mr. Bichara himself.  Orascom moved to quash these subpoenas on several grounds, including among other things that Mr. Bichara was immune from service of process when he was purportedly served and that this Court lacked personal jurisdiction over Orascom.

On October 11, 2005, after full briefing and a hearing on September 13, 2005 related to these and other federal nonparty subpoenas, this Court quashed the Orascom and Bichara subpoenas because Mr. Bichara was immune from service of process when he was in New York to attend an unrelated judicial proceeding.  *See Estate of Ungar v. Palestinian Auth.*, No. 18 MS 0302, 2005 WL 2620588, at *4-7 (S.D.N.Y. Oct. 11, 2005) *("Ungar I")*.  On November 14, 2005, Plaintiffs noticed an appeal from this Court's ruling in *Ungar I*.

> ### 2. *Estate of Ungar v. Palestinian Auth.*, No. 18 MS 0302, 2005 WL 3005810 (S.D.N.Y. Nov. 7, 2005) ("*Ungar II*")

Following Orascom's challenge to the Orascom and Bichara subpoenas, Plaintiffs issued additional federal subpoenas directed to Orascom and to actual and purported Orascom representatives in aid of Plaintiffs' state-court enforcement proceedings.  Mr. Zouhair Khaliq, who is not an Orascom representative, and Hatim El-Gammal, Orascom's Investor Relations Director, were in New York to attend a conference when they were served with these federal subpoenas on or about September 8, 2005.  As previously stated by Orascom in *Ungar II*, Mr. Khaliq is not a representative of Orascom, but rather is the Chief Executive Officer of Mobilink, a subsidiary of Orascom.  *See* Orascom Reply in Support of its Mot. to Quash Nonparty Subpoenas at 1 n.1 (Sept. 26, 2005).  At the same time, Messrs. Khaliq and El-Gammal also were provided with copies of the state-court Turnover Petition and a now-signed version of the Restraining Notice.

Plaintiffs separately served federal nonparty subpoenas on Orascom's counsel, White & Case LLP, as well as on numerous other nonparties, seeking jurisdictional discovery about Orascom's contacts with the United States.  Plaintiffs further filed two orders to show cause (i) seeking  the issuance of a subpoena pursuant to 28 U.S.C. § 1783 requiring the appearance of Orascom Chairman and Chief Executive Officer Naguib Sawiris for a deposition, and (ii)

3

moving to strike the Declaration of Amr Esmat Abaza, which addressed Orascom's lack of jurisdictional contacts with New York and the United States among other things.

Orascom moved to quash all outstanding nonparty subpoenas on various grounds, including among other things lack of personal jurisdiction over Orascom, lack of subject-matter jurisdiction, and lack of jurisdiction over the purported assets at issue.  On September 13, 2005, the Court heard oral argument from the parties on various issues including whether the Court had personal jurisdiction over Orascom.  Following the hearing, and after full briefing on Orascom's motion to quash all outstanding nonparty subpoenas, Plaintiffs submitted a letter dated October 28, 2005 to the Court setting forth additional jurisdictional allegations and attaching supporting documents.

On November 7, 2005, this Court ruled that it lacked general personal jurisdiction over Orascom, and that Plaintiffs had not made a prima facie showing of personal jurisdiction that would entitle them to jurisdictional discovery of Orascom.  *Estate of Ungar v. Palestinian Auth.*, No. 18 MS 0302, 2005 WL 3005810, at *9 (S.D.N.Y. Nov. 7, 2005) ("*Ungar II*").  The Court also rejected Plaintiffs' argument that Orascom's jurisdictional contacts should be based on the United States as a whole, rather than confined to the State of New York.  *See id.* at *5 (citing *Peacock v. Thomas*, 516 U.S. 349, 353, 116 S. Ct. 862, 868 (1996)).

Specifically, the Court held that the alleged jurisdictional contacts — (i) entering an American Depository Receipt ("ADR") Agreement with the Bank of New York and acquiring lines of credit from other New York banks; (ii) attending business conferences in New York; (iii) purchasing goods and services from U.S. suppliers; (iv) entering into contracts with U.S. telecommunications providers; and (v) donating $5,000 to a U.S. charity — were insufficient to make out a prima facie showing of general personal jurisdiction under the New York Long-Arm

Statute, N.Y. C.P.L.R. § 301, and under the due process "minimum contacts" test. *See id.* at *9 ("The total of Orascom's contacts with the United States is insufficient to satisfy the requirements of due process."); *id.* (concluding Plaintiffs had failed to make a prima facie showing of personal jurisdiction because "[w]ithout a presence in New York (or the United States as a whole), sales or operations in the United States, or other relevant and systematic jurisdictional contacts, Orascom's isolated purchases and occasional travel in the United States are not sufficient to subject [Orascom] to jurisdiction here").

Based on this reasoning, the Court quashed the subpoenas directed to Orascom. *Ungar II*, 2005 WL 3005810, at *9. The Court also limited the reach of the Khaliq and El-Gammal subpoenas to "these individuals as individuals." *Id.* at *11. Furthermore, the Court expressly stated that the personal jurisdiction analysis in this action "under Plaintiffs' independent complaint seeking a creditor's bill . . . would be much the same." *Id.* at *12 n.9. As of the date of this filing, Orascom is not aware of any appeal from *Ungar II*.

### 3.    Adjournment of This Civil Action Pending Disposition of *Ungar I* and *Ungar II*

On September 2, 2005, Plaintiffs initiated this federal enforcement proceeding against Orascom. While Orascom's various motions to quash and Plaintiffs' orders to show cause were pending before this Court in *Ungar I* and *II*, Plaintiffs and Orascom stipulated to adjournments of the date by which Orascom would be required to respond to the Complaint here because disposition of the pending motions "may directly implicate issues" related to this action. *See* Stipulation (dated September 23, 2005 and so ordered October 1, 2005); Stipulation (dated October 14, 2005 and so ordered October 17, 2005). The latest Stipulation provided for an adjournment "until at least twenty (20) days after November 18, 2005 (i.e., December 8, 2005)."

\*        \*        \*

Orascom hereby incorporates by reference its briefs filed in *Ungar I* and *II*, as well as its oral argument before this Court on September 13, 2005, regarding the issues of personal jurisdiction, subject-matter jurisdiction, and jurisdiction over the alleged property, money or debt.[1]  Furthermore, Orascom respectfully requests that the Court take judicial notice of the record before it in *Ungar I* and *II*.  *See Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 157, 89 S. Ct. 935, 942 (1969) (taking judicial notice of record in related case between same parties); *Kavowras v. New York Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) ("Judicial notice may be taken of public filings . . . .").

## ARGUMENT

## I.    THIS COURT'S PRIOR RULING THAT IT LACKS PERSONAL JURISDICTION OVER ORASCOM HAS PRECLUSIVE EFFECT UNDER THE COLLATERAL ESTOPPEL DOCTRINE

Under the collateral estoppel doctrine, this Court's holdings in *Ungar II* — that personal jurisdiction over Orascom is lacking and that Plaintiffs are not entitled to jurisdictional discovery of Orascom — preclude Plaintiffs from relitigating those issues here.

### A.    This Court Conclusively Held That It Lacks Personal Jurisdiction Over Orascom in *Ungar II*

As a preliminary matter, in *Ungar II*, the Court rejected Plaintiffs' argument that the United States, rather than New York, should serve as the basis for jurisdictional contacts.  *See*

---

[1] *See* Nonparties Orascom Telecom's and Khaled Bichara's Mot. to Quash [Bichara] Subpoena, at 5 (June 21, 2005); Nonparty Orascom's Mot. to Quash the Orascom Subpoena, at 3-4 (July 6, 2005); Consolidated Reply Mem. in Support of Nonparties Orascom Telecom Holding S.A.E.'s and Khaled Bichara's Mots. to Quash Subpoenas, at 1-2, 3-7 (Aug. 4, 2005); Decl. of Amr Esmat Abaza (Aug. 3, 2005); Mem. in Support of Nonparty Naguib Sawiris's Opp'n to Plaintiffs' Mot. for a Subpoena Pursuant to 28 U.S.C. § 1783, at 7-12 (Sept. 7, 2005); Nonparties Orascom Telecom Holding S.A.E. and Khaled Bichara's Opp'n to Pls.' Mot. to Strike Decl. or Examine Declarant, at 1-9 (Sept. 9, 2005); Supplemental Decl. of Amr Esmat Abaza (Sept. 9, 2005); Mem. of Law in Support of Nonparty Orascom Telecom Holding S.A.E.'s Mot. to Quash Outstanding Nonparty Subpoenas, at 3-8 (Sept. 11, 2005); Hr'g Tr. 20-23, Sept. 13, 2005; Second Supplemental Decl. of Amr Esmat Abaza (Sept. 23, 2005); Orascom Telecom's Reply in Support of Its Mot. to Quash Nonparty Subpoenas, at 2-10 (Sept. 26, 2005).

*Ungar II*, 2005 WL 3005810, at *5 (holding that examination of Orascom's contacts with the United States as a whole was not warranted because "this proceeding is not brought under the ATA[,]  [n]or does the ATA contain any supervening provisions related to enforcement of judgments that would command this Court to apply its wider jurisdictional reach to ancillary Rule 69 proceedings against third parties.") (citing *Peacock*, 516 U.S. at 353, 116 S. Ct. at 868).

Further, Plaintiffs advanced and the Court considered in detail various alleged contacts as a potential basis for this Court's personal jurisdiction over Orascom. *Id.* at *7-9. After full briefing, a hearing, and follow-up correspondence from Plaintiffs, the Court issued a decision carefully analyzing each of these alleged jurisdictional contacts, which the Court construed "liberally" (*id.* at *7), and concluded that the alleged contacts — taken separately and as a whole — were insufficient to confer personal jurisdiction over Orascom. *Id.* at *9.

Specifically, with respect to the jurisdictional contacts based on the ADR Agreement with the Bank of New York, this Court held that Orascom's involvement in the ADR program was insufficient because "having securities listed on a New York exchange, or transacting in private placements of commercial paper when such placements are made only to a limited group of buyers, is insufficient to confer general jurisdiction over the seller." *Id.* at *7 (citing *Nordic Bank PLC v. Trend Grp. Ltd.*, 619 F. Supp. 542, 565-67 (S.D.N.Y. 1985) (holding private placements insufficient even where "the sale of commercial paper is an essential aspect of the Nordic defendants' business")).  With respect to Orascom's alleged lines of credit from New York banks, the Court held that "acquiring a line of credit or funding, without more, has been held not to constitute 'doing business' within New York for purposes of the New York long-arm statute." *Id.* at *7 (citing *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 254 (S.D.N.Y.

2003) and *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990)).

As for jurisdictional contacts premised on the alleged attendance by Orascom representatives at business conferences in New York and Washington, D.C., this Court held that attendance at such conferences does not constitute "doing business" in New York for general jurisdictional purposes.  *See id.* at *8 ("attendance by Orascom officers at two transient business conferences, each open to anyone interested in their content, is not so 'continuous or permanent' a presence as to confer general jurisdiction over Orascom").

This Court also held as insufficient allegations that Orascom purchased goods and services from U.S. suppliers.  The Court held such contacts insufficient to confer personal jurisdiction because "Orascom is a purchaser of goods and services for use in its overseas business only"; "it does not maintain a presence in the United States, and generates no sales or other trade, apart from these purchases, in its dealings with United States companies"; and the contracts "do not appear to constitute a regular course of business."  *Id.* at *9 (citing N.Y. C.P.L.R. § 301 and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418, 104 S. Ct. 1868, 1874 (1984)).

Further, the Court held that Orascom's long-term contracts with U.S. businesses — such as entering into roaming agreements with U.S. wireless operators and subcontracting part of its network management to a U.S. corporation — to be jurisdictionally insufficient because "[n]one of these contracts is with a New York entity" and "these agreements are solely for the provision of services outside the United States."  *Id.* at *9.

Because the Court found these alleged contacts to be insufficient in aggregate, the Court did not need to consider Orascom's further argument that many of the alleged contracts were

entered with Orascom's subsidiaries, rather than Orascom itself, and thus could not be relied upon to show that Orascom was "doing business" in New York. *See id.* at *12 n.8 ("Because these contracts do not constitute sufficient jurisdictional contacts, I do not reach the issue of whether these subsidiaries are entities distinct from Orascom itself.").

Finally, this Court held Orascom's $5,000 contribution to a New York nonprofit to be similarly insufficient because "[p]roviding funding, without more, does not support a finding of general jurisdiction." *Id.* at *9 (citing *In re Ski Train Fire*, 343 F. Supp. 2d 208, 216 (S.D.N.Y. 2004)).

This Court ultimately concluded that "[t]he total of Orascom's contacts with the United States is insufficient to satisfy the requirements of due process . . . [because Plaintiffs had] not made a prima facie case that Orascom meets" the *Helicopteros* requirement of a "'continuous and systematic' relationship with the forum." *Id.* at *9; *see also id.* ("Without a presence in New York (or the United States as a whole), sales or operations in the United States, or other relevant and systematic jurisdictional contacts, Orascom's isolated purchases and occasional travel in the United States are not sufficient to subject it to jurisdiction here.").

**B.    This Court's Ruling In *Ungar II* Collaterally Estops Plaintiffs From Relitigating the Personal Jurisdiction Issue Here**

This Court's ruling on personal jurisdiction over Orascom in *Ungar II* is entitled to preclusive effect in this action, and Plaintiffs are barred from relitigating that same issue here. Under the collateral estoppel doctrine, a judgment in a prior federal proceeding bars a party from relitigating an issue if:

> (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 108 (2d Cir. 2001); *see also Langella v. Bush*, 306 F. Supp. 2d 459, 466 (S.D.N.Y. 2004) (substantially same) (citing *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)).  Each of these elements is satisfied here.

First, the issue in *Ungar II* — whether personal jurisdiction exists over Orascom under the New York Long-Arm Statute, N.Y. C.P.L.R. § 301, and under the U.S. Constitution — is identical to the issue necessarily before the Court in this action.   In *Ungar II*, Orascom challenged this Court's jurisdiction over it, just as it does in this action.  Plaintiffs' claims for relief under a creditor's bill or supplemental bill or, alternatively, under the New York State turnover provisions depend upon whether the Court has personal jurisdiction over Orascom.

Second, the issue of this Court's personal jurisdiction over Orascom was "actually litigated and actually decided" in the prior proceeding.  In *Ungar II*, this Court analyzed each of the five categories of jurisdictional contacts alleged by Plaintiffs and expressly held that such contacts were individually and collectively insufficient to establish a prima facie showing of personal jurisdiction over Orascom.  *See* 2005 WL 3005810, at *6-9.  Indeed, in *Ungar II*, this Court expressly acknowledged that the analysis of personal jurisdiction in this federal creditor's bill and turnover action "would be much the same." *Id.* at *12 n.9.

Third, Plaintiffs had a full and fair opportunity to litigate the personal jurisdiction question in the prior proceeding, and this Court recognized as much.  *See id.* at *12 n.2 ("Arguments in favor of and against personal jurisdiction over Orascom and its employees have been raised in a number of briefs before this Court . . . .") (citing parties' briefs); *id.* ("This Court considers facts and arguments from all [briefs] in this decision.").  Plaintiffs filed no less than four briefs and voluminous accompanying exhibits in support of their personal jurisdiction argument.  *See* Pls.' Mem. Opp'n to Mots. to Quash by Non-Party Subpoena Recipients Orascom

and Bichara, at 22-23 (July 19, 2005); Pls.' Order to Show Cause & Mem. in Support of Pls.' Mot. for a Subpoena Pursuant to 28 U.S.C. § 1783, at 7-10 (Aug. 23, 2005); Pls.' Mem. of Law in Support of Pls.' Mot. to Strike Declaration or Examine Declarant, at 5-8 (Sept. 1, 2005); Pls.' Mem. Opp'n to Orascom's Mot. to Quash Outstanding Nonparty Subpoenas, at 8-20 (Sept. 21, 2005).  In addition, during the September 13, 2005 hearing, the Court heard Plaintiffs' personal jurisdiction arguments.  *See* Hr'g Tr. 20-23, 25-26, September 13, 2005.  Even after the hearing and full briefing on the personal jurisdiction issue, Plaintiffs made additional jurisdictional allegations in a letter to the Court, which the Court considered and rejected.  *See Ungar II*, 2005 WL 3005810, at *12 nn.3-4.

Finally, the Court's conclusion that it lacked personal jurisdiction over Orascom was the basis for its decision and order in *Ungar II* quashing the subpoenas directed to Orascom and to its actual and purported representatives in their official capacities.

Because each element for application of collateral estoppel is met, Plaintiffs are barred from relitigating the personal jurisdiction issue here.  *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F. 3d 724, 731 (2d Cir. 1998) (holding that the D.C. Circuit's prior ruling on service of process and personal jurisdiction "should control under the doctrine of collateral estoppel or issue preclusion").  This is so even in the event of an appeal.  *See Flair Broad. Corp. v. Powers*, No. 89 CIV. 2528 & 5185, 1998 WL 247521, at *4 n.7 (S.D.N.Y. May 15, 1998) ("[T]he pendency of an appeal does not preclude the application of collateral estoppel under either federal or New York law.").

## II.    THIS COURT LACKS SUBJECT-MATTER JURISDICTION

Plaintiffs base this Court's subject-matter jurisdiction on a variety of grounds: (i) federal question jurisdiction under the Anti-Terrorism Act ("ATA"), 18 U.S.C. §§ 2333, 2338 and 28 U.S.C. § 1331; (ii) the federal registration of judgments statute, 28 U.S.C. § 1963; (iii) the

Court's ancillary enforcement jurisdiction; and (iv) the Court's equity powers. Compl. ¶ 5. None is a proper basis for this Court's exercise of subject-matter jurisdiction.

### A.    The ATA Cannot Serve As The Basis For Subject-Matter Jurisdiction In This Case

The ATA cannot serve as the basis for this Court's subject-matter jurisdiction over Plaintiffs' claims against Orascom, a third-party garnishee. The ATA creates a federal cause of action for acts of international terrorism. *See Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 225 (S.D.N.Y. 2003) ("18 U.S.C. § 2333 creates a cause of action for the 'estate, survivors, or heirs' of any U.S. national killed by an act of international terrorism"). Plaintiffs' Complaint does not contain any allegation against Orascom related to international terrorism, but instead, seeks equitable relief under a creditor's bill or supplemental bill or, alternatively, for turnover pursuant to N.Y. C.P.L.R. §§ 5225 and 5227. Thus, the ATA may not serve as the basis for federal question jurisdiction in this action. *See Ungar II*, 2005 WL 3005810, at *5 (rejecting Plaintiffs' claim that the ATA provides "the appropriate measure of this Court's jurisdiction" because "this proceeding is not brought under the ATA," and the ATA lacks "any supervening provisions related to the enforcement of judgments"); *see also Peacock*, 516 U.S. at 354, 116 S. Ct. at 867 (because plaintiff "alleged no 'underlying' violation of any provision of ERISA [by the defendant] . . . , neither ERISA's jurisdictional provision . . . , nor 28 U.S.C. § 1331 supplied the District Court with subject-matter jurisdiction over this suit").

### B.    This Court Lacks Ancillary Enforcement Jurisdiction

Because the present federal action against Orascom involves claims that were not before the judgment court in the ATA action, this proceeding is not "ancillary," but instead requires that this Court have an independent basis of subject-matter jurisdiction. *See Peacock*, 516 U.S. at 359, 116 S. Ct. at 869 (holding that the district court lacked ancillary jurisdiction over Plaintiffs'

second suit because "[t]his is a new action based on theories of relief that did not exist, and could not have existed, at the time the court entered judgment in the ERISA case").

In *Peacock*, the plaintiff prevailed in an ERISA claim against his employer, a corporation, in district court, and then sought to rely on ERISA as the basis for ancillary jurisdiction in a second suit seeking to pierce the corporate veil between the corporation and its officer and shareholder. The Supreme Court concluded that the plaintiff's "veil-piercing claim does not state a cause of action under ERISA and cannot independently support federal jurisdiction." 516 U.S. at 353-54, 116 S. Ct. at 866. The plaintiff's attempt to extend liability for payment of the ERISA judgment from the corporation to its officer and shareholder under a veil-piercing theory did not fall within the district court's ancillary enforcement jurisdiction because "[o]ther than the existence of the ERISA judgment itself, this suit has little connection to the ERISA case." *Id.* 516 U.S. at 359, 116 S. Ct. at 869.

Likewise here, Plaintiffs seek to compel Orascom to turn over purported money, property, or debt allegedly owed to the PIF, under a veil-piercing or alter-ego theory that cannot independently support federal question jurisdiction. The present proceeding is thus not "ancillary to the judgment in the former suit." *Id.* 516 U.S. at 358, 116 S. Ct. at 868. Rather, it is "entirely new and original," and seeks "relief . . . of a different kind or on a different principle than that of the prior decree." *Id.* (internal quotations and citations omitted).

In particular, Plaintiffs pursue this civil action on theories that did not exist at the time of the entry of the ATA judgment — specifically, that the PIF (which was ***not*** a party to the Rhode Island action and with which Orascom Telecom was allegedly involved in a transaction) is a "shell" or "alias" of the PA. *See* Compl. ¶¶ 16, 47, 51-54. Plaintiffs alternatively allege that, if the PIF has a cognizable personality or corporate identity separate from the PA, then it is

"wholly owned and controlled by the PA with no purpose or business other than to act as an investment vehicle for the PA" (*id.* ¶55); it is an agent and/or trustee and/or fiduciary of the PA (*id.* ¶56); or it constitutes and serves as a constructive or resulting trust for the PA (*id.* ¶57). In addition, Plaintiffs allege that the PIF was "capitalized by the PA without consideration" (*id.* at 58); that "all assets and property nominally titled to and/or owned by the PIF were conveyed to the PIF by the PA without fair consideration during the period that the PA was a defendant in the underlying action for money damages in the United States District Court in Rhode Island" (*id.* at 59); that none of the alias and shell Funds own any property or assets of their own (*id.* at 60); and that "any and all assets and property of any type designated or titled to, or held in, the name of the Aliases and Shell Funds, are legally, beneficially and equitably owned by the PA" (*id.* at 61), and "legally, beneficially, and equitably owned, due and payable to the PA" (*id.* at 62).

Under *Peacock*, this Court lacks ancillary jurisdiction because Plaintiffs' veil-piercing and alter-ego claims require an independent basis of subject-matter jurisdiction. *See* 516 U.S. at 357-58, 116 S. Ct. at 868 ("We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment."); *see also Epperson*, 242 F.3d at 104 (acknowledging that "an action to establish liability on the part of a third party . . . must have its own source of federal jurisdiction"); *Manway Constr. Co. v. Housing Auth.*, 711 F.2d 501, 505 (2d Cir. 1983) ("Even at the farthest reaches of ancillary jurisdiction, we have not allowed district courts to consider claims so distinct as here from the underlying basis for federal jurisdiction."); *Williams v. Pfeffer*, 117 F. Supp. 2d 331, 335 (S.D.N.Y. 2000) (noting that "*Peacock* specifically listed civil conspiracy, fraudulent conveyance and veil piercing claims as examples of new and original theories that could not be maintained in subsequent enforcement actions against third parties

14

without an independent basis for subject matter jurisdiction") (internal quotations omitted); *id.* (holding that subject-matter jurisdiction was lacking because "petitioner seeks to impose obligations on persons and entities not subject to the original federal judgment based upon [various theories including] alter ego"); *accord Nat'l Westminster Bank v. Cheng*, 751 F. Supp. 1158, 1160 (S.D.N.Y. 1990).

Indeed, in oral argument before this Court, Plaintiffs conceded that this Court lacks such ancillary enforcement jurisdiction:

> In aid of enforcing the federal judgment, we have brought a turnover proceeding next door [in State Court]. The reason why we brought it there has to do with the laws governing subject matter jurisdiction.
>
> There are some claims in that turnover proceeding, ***particularly the claim of alter ego analysis***, which is only one of the claims presented there. ***The law seems clear to us in the Second Circuit that there is no subject matter jurisdiction to bring that claim here.*** Therefore, we were constrained to bring it [in State Court] . . . .

Hr'g Tr. 23, Sept. 13, 2005 (emphasis added); *see also* Pls.' Mem. Opp'n Orascom's Motion to Quash Outstanding Nonparty Subpoenas, at 21 n.9 (stating "plaintiffs filed the State Court petition, *inter alia*, because certain of these alternative avenues of relief (alter ego, veil-piercing) are not within this Court's subject matter jurisdiction") (citing *Epperson*, 242 F. 3d 100).

Similarly, this Court's equity powers (Compl. ¶ 5) may not serve as the basis for subject-matter jurisdiction because an independent basis for federal jurisdiction is required. *See In re "Agent Orange" Prod. Liab. Litig.*, 506 F. Supp. 737, 740 (E.D.N.Y. 1979) (holding that "[f]ederal courts have no independent 'equity jurisdiction'; they may grant equitable relief, but not unless there is an independent statutory basis for federal jurisdiction, which is conferred only by specific congressional enactment"), *rev'd on other grounds*, 635 F.2d 987 (2d. Cir. 1980); *see*

*also Sansom Comm. v. Lynn*, 735 F.2d 1535, 1538 (3d Cir. 1984) ("[A] district court cannot wield its equitable power beyond the realm of its federal subject matter jurisdiction.").

### C.    The Federal Registration Statute, 28 U.S.C. § 1963, Does Not Confer Subject-Matter Jurisdiction In This Case

Plaintiffs also improperly rely on the federal judgment registration statute, 28 U.S.C. § 1963, as a basis for subject-matter jurisdiction.  This statute provides:

> A judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . when the judgment has become final . . . . A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

28 U.S.C. § 1963.  "A primary purpose of this statute is to enable a successful litigant to enforce a money judgment in a District Court other than that which rendered the judgment without the necessity of instituting a *de novo* action" against the judgment debtor.  *Squeez-A-Purse Corp. v. Stiller*, 31 F.R.D. 261, 263 (S.D.N.Y. 1962).

Nothing in the language of the statute remotely suggests that it confers federal question jurisdiction.  Indeed, courts have held that § 1963 may only serve as the basis for subject-matter jurisdiction if the claim at issue relates to the registration of the judgment itself, for instance, a claim that § 1963 has been violated.  *See Oakes v. Horizon Fin., S.A.*, 259 F.3d 1315, 1317 (11th Cir. 2001) (holding that a substantial federal question is presented, and thus federal jurisdiction exists, where a foreign judgment has been registered in violation of 28 U.S.C. § 1963"); *Sephus v. Gozelski*, 864 F.2d 1546, 1549 (11th Cir. 1989) (vacating and remanding with directions to dismiss action because the district court lacked subject-matter jurisdiction under the registration of judgment statute, 28 U.S.C. § 1963); *id.* at 1548 ("It is one thing to say that the registration of judgments statute grants jurisdiction to set aside an improperly registered judgment . . . it is quite different to say that 28 U.S.C. § 1963 confers jurisdiction . . . .").  Accordingly, because this

action does not involve allegations that the federal registration statute was violated, Plaintiffs may not rely on § 1963 as a basis for subject-matter jurisdiction.

*      *      *

In sum, the Court lacks subject-matter jurisdiction over this action under each of Plaintiffs' proposed theories, and Plaintiffs' Complaint should be dismissed with prejudice.

## III.    THIS COURT LACKS PERSONAL JURISDICTION OVER ORASCOM

As held in *Ungar II*, this Court lacks personal jurisdiction over Orascom. In particular, Plaintiffs' jurisdictional allegations (Compl. ¶¶ 14-15, 38) are individually and collectively insufficient to make out a prima facie showing of personal jurisdiction over Orascom. *See Ungar II*, 2005 WL 3005810, at *7-9; *see also Helicopteros Nacionales*, 466 U.S. at 418, 104 S. Ct. at 1874 (holding "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions"); *Landoil Res. Corp. v. Alexander & Alexander Servs. Inc.*, 918 F.2d 1039, 1045 (2d Cir. 1990) (holding 13 business trips insufficient where "business trips were of short duration, were by different employees, involved a number of accounts, including large multi-national corporations headquartered in New York, and in some instances concerned contacts that were not related to New York in any way"); *In re Ski Train Fire*, No. 1428, 01 Civ. 7342, 2003 WL 1807148, at *4 (S.D.N.Y. Apr. 4, 2003) (holding that "[a] long line of cases establishes that a foreign defendant is not 'present' in New York for the purposes of jurisdiction simply because it has engaged in financing transactions") (citing cases); *Nordic Bank PLC v. Trend Group, Ltd.*, 619 F. Supp. 542, 565-66 (S.D.N.Y. 1985) (holding sales of commercial paper through New York brokerage firms "constitutionally insufficient to support the exercise of jurisdiction over a cause of action not arising out of that sale.").

17

Even if collateral estoppel did not operate to preclude Plaintiffs from asserting personal jurisdiction over Orascom, there would be no reason for this Court to deviate from its carefully considered prior ruling.[2]

## IV.  PLAINTIFFS FAIL TO STATE A CLAIM FOR A CREDITOR'S BILL OR FOR TURNOVER

### A.    Plaintiffs' Claim For A Creditor's Bill Should Be Dismissed

Plaintiffs' claim for equitable relief under a creditor's bill or supplemental bill fails because (i) Plaintiffs have an adequate remedy at law, and (ii) Plaintiffs have not obtained any judgment against the PIF.  *See Grupo Mexicano v. Alliance Bond Fund*, 527 U.S. 308, 319, 119 S. Ct. 1961, 1968 (1999) (explaining that the "equitable action known as a 'creditor's bill' . . . was used . . . to permit a judgment creditor . . . to reach equitable interests not subject to execution at law . . . .").

First, a claim for a creditor's bill or supplemental bill is properly dismissed if a judgment creditor has an adequate remedy at law.  *See Hunter v. Youthstream Media Networks, Inc.*, 241 F. Supp. 2d 52, 57 (D. Mass. 2002) (holding that "[s]ince [plaintiff] has not made a showing that he lacks an adequate remedy at law, he is not entitled to relief under the general equity powers of the court."); *Bourget v. Gov't Employees Ins.*, 287 F. Supp. 108, 110 (D. Conn. 1968) (holding

---

[2]  For purposes of this argument, Orascom incorporates by reference and reasserts its arguments on personal jurisdiction in *Ungar I* and *Ungar II*.  *See* Nonparties Orascom Telecom's and Khaled Bichara's Mot. to Quash [Bichara] Subpoena, at 5 (June 21, 2005); Nonparty Orascom's Mot. to Quash the Orascom Subpoena, at 3-4 (July 6, 2005); Consolidated Reply Mem. in Support of Nonparties Orascom Telecom Holding S.A.E.'s and Khaled Bichara's Mots. to Quash Subpoenas, at 3-6 (Aug. 4, 2005); Decl. of Amr Esmat Abaza (Aug. 3, 2005); Mem. in Support of Nonparty Naguib Sawiris's Opp'n to Plaintiffs' Mot. for a Subpoena Pursuant to 28 U.S.C. § 1783, at 7-12 (Sept. 7, 2005); Nonparties Orascom Telecom Holding S.A.E. and Khaled Bichara's Opp'n to Pls.' Mot. to Strike Declaration or Examine Declarant, at 1-9 (Sept. 9, 2005); Supplemental Decl. of Amr Esmat Abaza (Sept. 9, 2005); Mem. of Law in Support of Nonparty Orascom Telecom Holding S.A.E.'s Mot. to Quash Outstanding Nonparty Subpoenas, at 5-8 (Sept. 11, 2005); Hr'g Tr. 20-23, Sept. 13, 2005; Second Supplemental Decl. of Amr Esmat Abaza (Sept. 23, 2005); Orascom Telecom's Reply in Support of Its Mot. to Quash Nonparty Subpoenas, at 2-7 (Sept. 26, 2005).

that because "plaintiff has an adequate statutory remedy, there is no justification for permitting plaintiff to invoke the Court's equitable powers to maintain this action in the nature of a creditor's bill.").

Plaintiffs have an adequate remedy at law pursuant to N.Y. C.P.L.R. §§ 5225 and 5227, as reflected in Plaintiffs' own Second Claim for Relief (Compl. ¶¶ 79-83) and in their pending state-court enforcement proceedings. Plaintiffs have also sought to reach the alleged property, money or debt through a Sheriff's Levy and Execution through the New York Supreme Court. Indeed, a creditor's bill may no longer even be available in this jurisdiction. *See United States v. Mr. Hamburg Bronx Corp.*, 228 F. Supp. 115, 124 (S.D.N.Y. 1964) ("Supplementary proceedings are created by statute to replace the former procedure of filing a creditor's bill in equity."); *Peninsula Nat'l Bank v. Cincotti Constr. Co.*, 49 N.Y.S. 2d 936 (N.Y. Sup. Ct. 1944) (same), *aff'd*, 268 A.D. 976, 52 N.Y.S. 568 (N.Y. App. Div. 1944).

As for Plaintiffs' claim for a supplemental bill, historically the purpose of a supplemental bill in equity was to support the enforcement of the creditor's bill when changes in circumstances occurred subsequent to its filing. *See* 21 Am. Jur. 2d *Creditors' Bills* § 69 (1998) ("The function of a supplemental bill in equity is to support the cause of the suit existing when the original bill was filed; thus, changes in circumstances, occurring after the filing of the original bill, may properly be brought before the court by amendment or by supplemental bill in the nature of an amendment."). Since Plaintiffs' claim for a creditor's bill fails, their claim for a supplemental bill is equally unavailing.

Furthermore, Plaintiffs' claims for a creditor's bill or supplemental bill should be dismissed as against Orascom because Plaintiffs do not have any judgment against the PIF. *See Grupo Mexicano*, 527 U.S. at 319, 119 S. Ct. at 1968 ("It is well established . . . that, as a general

rule, a creditor's bill could be brought only by a creditor who had already obtained a judgment establishing that debt."); *JSC Foreign Econ. Ass'n v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 389 (S.D.N.Y. 2003) ("Before the plaintiff can seek equitable relief in enforcing the prior judgment, it must prove the legal liability of Reich and Jossem as alter egos.") (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112, 89 S. Ct. 1562 (1969) (finding injunction issued against alleged alter ego of judgment debtor improper where alter ego status had not yet been litigated)); *Algonquin Power Corp. v. Trafalgar Power, Inc.*, No. CIVA5:00CV1246, 2000 WL 33963085, at *15 (N.D.N.Y. Nov. 8, 2000) (recognizing that "as a general rule a creditor's bill could only be invoked by a creditor who had already obtained a judgment establishing debt.").

### B.    Plaintiffs' Statutory Claim For Turnover Should Be Dismissed

Plaintiffs' claim for turnover should be dismissed because Plaintiffs have not shown or alleged that the Complaint was served on the judgment debtors, the PA and the PLO.  Sections 5225 and 5227 of the N.Y. Civil Practice Law and Rules both require that "[n]otice of the proceeding shall also be served upon the judgment debtor."  N.Y. C.P.L.R. §§ 5225(b) and 5227; *Phoenician Trading Partners LP v. Iseson*, No. CV-04-2178, 2004 WL 3152394, at *4 (S.D.N.Y. Dec. 11, 2004) ("Because the proceeding divests the judgment debtor of any rights to the property in possession of the third party, due process requires proper notice of the turnover proceeding.").  Such notice must be served either "in the same manner as a summons or by registered or certified mail, return receipt requested."  N.Y. C.P.L.R. §§ 5225(b) and 5227.

Here, there is no indication in the docket or in the served papers that Plaintiffs have complied with the requirement for service on the judgment debtors.  Failure to serve the judgment debtors is grounds for dismissal of the turnover claim.  *See Phoenician Trading Partners LP*, 2004 WL 3152394, at *4 (holding that "[t]o be entitled to judgment pursuant to

§ 5225 or § 5227, [the judgment creditor] must also have served . . . the judgment debtor . . . with notice of the proceeding[,] [and] [f]ailure to serve the judgment debtor renders the proceeding jurisdictionally defective") (citing *Oil City Petroleum Co. v. Fabac Realty Corp.*, 70 A.D.2d 859, 859, 418 N.Y.S.2d 51 (N.Y. App. Div. 1979)); *Bergdorf Goodman, Inc. v. Marine Midland Bank*, 97 Misc. 2d 311, 411 N.Y.S.2d 490, 491 (N.Y. Civ. Ct. 1978) (holding that "there must be **strict compliance** with the provisions for service upon the judgment debtor" and that "improper notice to the judgment debtor alone would be sufficient ground to dismiss the petition") (emphasis added).

## V.    THIS COURT LACKS JURISDICTION OVER THE ALLEGED ASSETS

This Court lacks jurisdiction over the very assets that Orascom is alleged to hold in favor of the PIF, for courts may not issue orders attaching or executing on assets located outside their territorial jurisdiction.  *See Fidelity Partners, Inc. v. Philippine Export & Foreign Loan Guar. Corp.*,  921 F. Supp. 1113, 1120 (S.D.N.Y. 1996) ("the issuance of a restraining order and an order of execution . . . requires that the property sought to be levied against exist within the jurisdiction") (collecting cases); *Koehler v. Bank of Bermuda*, No. M18-302, 2005 WL 551115, at *11 (S.D.N.Y. Mar. 9, 2005) ("It is a well established principle that a New York Court cannot attach property not within its jurisdiction.") (citing cases); *Sara Lee Corp. v. Gregg*, No. 1:02CV00195, 2002 WL 1925703 at *1-2 (M.D.N.C. Aug. 15, 2002) (holding that a writ of attachment cannot reach property throughout North Carolina, but only such property existing within the district).

This territorial limitation on the Court's jurisdiction over a garnishee's assets applies even if the Court has personal jurisdiction over the potential garnishee in question.  *Koehler*, 2005 WL 551115, at *13 (holding that even if court had personal jurisdiction over garnishee, neither N.Y. C.P.L.R. § 5225 nor § 5227 authorize the court to order garnishee to transfer

property presently located in Bermuda to judgment creditor); *see also Mones v. Commercial Bank of Kuwait*, No. 18 Misc. 0302, 2005 WL 1653930, at *4 (S.D.N.Y. July 12, 2005) ("Even if the Court had jurisdiction over [respondent] CBK, the Court lacked authority to order CBK to transfer assets from Kuwait into the Southern District of New York.").

Here, Plaintiffs have not alleged that the purported assets at issue are located in the Southern District of New York or, for that matter, within the United States. Rather, the Complaint's own allegations suggest that the alleged transactions at issue were conducted entirely overseas (*see* Compl. ¶¶ 39-46) and, as Orascom argued in *Ungar II*, even the press releases upon which Plaintiffs rely to pursue Orascom as a potential garnishee suggest that the purported assets at issue are located outside the United States. *See* Orascom's Mem. in Support of Nonparty Orascom's Mot. to Quash Outstanding Nonparty Subpoenas, at 4 (Sept. 11, 2005) (citing Pls.' Opp'n to Orascom and Bichara's Mots. to Quash at Exs. I & J (describing overseas transactions between Orascom and the Palestinian Funds related to Orascom Telecom Algeria and Orascom Telecom Tunisia)).

Indeed, as Orascom established in *Ungar II*, Orascom does not hold any property in New York or elsewhere in the United States, let alone any property alleged to belong to the judgment debtors or in which the judgment debtors have an interest. *See* Orascom's Consol. Reply Ex. 8 (Abaza Decl.) ¶ 8. Notably, in Plaintiffs' Motion to Strike the Abaza Declaration, they did not even challenge Mr. Abaza's statement that Orascom does not hold property in New York or elsewhere in the United States.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

Dated: December 8, 2005                    Respectfully submitted,

**WHITE & CASE**LLP

By:  /s/ Christopher M. Curran
      Christopher M. Curran (CC-4779)
      Nicole E. Erb (NE-7104)
      701 Thirteenth Street, N.W.
      Washington, D.C. 20005
      (202) 626-3600

*Counsel for Orascom Telecom Holding S.A.E.*