**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

The Estate of Yaron Ungar, et al.,

|                                 | *Plaintiffs*,  | Case No. 05-CV-7765 (CM) (LMS) |

v.

Orascom Telecom Holding S.A.E., et al.,

*Defendants.*

# MEMORANDUM OF LAW IN SUPPORT OF
## ORASCOM TELECOM HOLDING S.A.E.'S MOTION TO
## DISMISS THE FIRST AMENDED COMPLAINT IN ITS ENTIRETY

**WHITE & CASE** LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600

February 13, 2006                    *Counsel for Orascom Telecom Holding S.A.E.*

# **TABLE OF CONTENTS**

ARGUMENT..................................................................................................................2

I.    THIS COURT'S PRIOR RULING THAT IT LACKS PERSONAL
      JURISDICTION OVER ORASCOM HAS PRECLUSIVE EFFECT UNDER
      THE COLLATERAL ESTOPPEL DOCTRINE...............................................2

      A.    This Court Conclusively Held That It Lacks Personal Jurisdiction Over
            Orascom.......................................................................................................2

      B.    This Court's Prior Ruling Collaterally Estops Plaintiffs From Relitigating
            the Personal Jurisdiction Issue Here .........................................................5

      C.    Plaintiffs' New Personal Jurisdiction Allegations Should Not Preclude
            Application of Collateral Estoppel ...........................................................7

II.   THIS COURT LACKS SUBJECT-MATTER JURISDICTION ....................12

      A.    The ATA Cannot Serve As The Basis For Subject-Matter Jurisdiction In
            This Case ....................................................................................................13

      B.    This Court Lacks Ancillary Enforcement Jurisdiction..........................13

      C.    The Federal Registration Statute, 28 U.S.C. § 1963, Does Not Confer
            Subject-Matter Jurisdiction In This Case ...............................................17

III.  THIS COURT LACKS PERSONAL JURISDICTION OVER ORASCOM ..................18

IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR A CREDITOR'S BILL OR
      FOR TURNOVER .........................................................................................19

      A.    Plaintiffs' Claim For A Creditor's Bill Should Be Dismissed ..............19

      B.    Plaintiffs' Statutory Claim For Turnover Should Be Dismissed ...........21

V.    THIS COURT LACKS JURISDICTION OVER THE ALLEGED MONEY,
      PROPERTY OR DEBT..................................................................................22

CONCLUSION..............................................................................................................24

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                      **PAGE(S)**

*In re "Agent Orange" Prod. Liab. Litig.*, 506 F. Supp. 737 (E.D.N.Y. 1979),
    *rev'd on other grounds*, 635 F.2d 987 (2d Cir. 1980) .................................................. 16-17

*Algonquin Power Corp. v. Trafalgar Power, Inc.*, No. CivA5:00cv1246,
    2000 WL 33963085 (N.D.N.Y. Nov. 8, 2000) .................................................21

*Bourget v. Gov't Employees Ins. Co.*, 287 F. Supp. 108 (D. Conn. 1968)...................................19

*Dale v. Banque SCS Alliance S.A.*, No. 02 Civ. 3592, 2004 WL 2389894
    (S.D.N.Y. Oct. 22, 2004) .................................................................8, 18

*Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357 (2d Cir. 1991) ............................................9

*Epperson v. Entm't Express, Inc.*, 242 F.3d 100 (2d Cir. 2001).......................................5, 15, 16

*Estate of Ungar v. Palestinian Auth.*, 396 F. Supp. 2d 376
    (S.D.N.Y. 2005) ...................................................................................1

*Estate of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541
    (S.D.N.Y. 2005) ..........................................................................*passim*

*Fidelity Partners, Inc. v. Philippine Exp. and Foreign Loan Guar. Corp.*,
    921 F. Supp. 1113 (S.D.N.Y. 1996) .................................................22

*Flair Broad. Corp. v. Powers*, No. 89 Civ.2528, 1998 WL 247521
    (S.D.N.Y. May 15, 1998) ...............................................................7

*Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38 (2d Cir. 1986) .......................................................5

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
    527 U.S. 308, 119 S. Ct. 1961 (1961).........................................19, 21

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408,
    104 S. Ct. 1868 (1984)..........................................................2-3, 3, 4, 5

*Hunter v. Youthstream Media Networks, Inc.*, 241 F. Supp. 52
    (D. Mass. 2002) ...............................................................................19

*Ins. Corp. of Ireland, LTD v. Compagnie des Bauxites*, 456 U.S. 694,
    102 S. Ct. 2099 (1982)....................................................................7, 8

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998) .........................................................3

*JSC Foreign Econ. Assoc. v. Int'l Dev. & Trade Servs., Inc.*,
    295 F. Supp. 2d 366 (S.D.N.Y. 2003) ........................................ 20-21

*Kavowras v. New York Times Co.*, 328 F.3d 50 (2d Cir. 2003) ........................................1

*Koehler v. Bank of Bermuda*, No. M18-302, 2005 WL 551115
    (S.D.N.Y. Mar. 9, 2005) ...........................................................22, 23

*Langella v. Bush*, 306 F. Supp. 2d 459 (S.D.N.Y. 2004) ........................5

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039
    (2d Cir. 1990)...............................................................................3

*Latino Officers Ass'n v. City of New York*, 253 F. Supp. 771
    (S.D.N.Y. 2003)...............................................................................8

*Liberty Mut. Ins. Co. v. FAG Bearing Corp.*, 335 F.3d 752 (8th Cir.2003)..................8

*Libutti v. United States*, 107 F.3d 110 (2d Cir. 1997) ..................12

*Manway Constr Co., Inc. v. Housing Auth. of the City of Hartford*,
    711 F.2d 501 (2d Cir. 1983) ........................................................15

*Mario Valente Collezioni, LTD v. AAK Ltd*, No. 02 Civ. 0099,
    2004 WL 724690 (S.D.N.Y. Mar. 26, 2004) ......................................7

*Mende v. Milestone Tech., Inc.*, 269 F. Supp. 246 (S.D.N.Y. 2003) ................3

*Mones v. Commercial Bank of Kuwait, S.A.*, 299 F. Supp. 2d 310
    (S.D.N.Y. 2005) ...............................................................................23

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004),
    *cert. denied*, -- U.S. --, 125 S. Ct. 2270 (2005) ..................20

*Nat'l Westminster Bank U.S.A. v. Cheng*, 751 F. Supp. 1158
    (S.D.N.Y. 1985)...............................................................................16

*Nordic Bank PLC v. Trend Group, LTD*, 619 F. Supp. 542 (S.D.N.Y. 1985)..................3

*Oakes v. Horizon Fin., S.A.*, 259 F.3d 1315 (11th Cir. 2001) ....................17

*\*Peacock v. Thomas*, 516 U.S. 349, 116 S. Ct. 862 (1996)...................................*passim*

*Phoenician Trading Partners LP v. Iseson*, No. CV-04-2178,
    2004 WL 3152394 (E.D.N.Y. Dec. 11, 2004) ....................................21, 21-22

*Sansom Comm. v. Lynn*, 735 F.2d 1535 (3d Cir. 1984).........................................17

*Sara Lee Corp. v. Gregg*, No. 1:02 CV 00195, 2002 WL 1925703
    (M.D.N.C. Aug. 15, 2002) ...........................................................22

*Sephus v. Gozelski*, 864 F.2d 1546 (11th Cir. 1989) ..................17-18

*Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 89 S. Ct. 935 (1969).....................................1

*In re Ski Train Fire*, No. 1428 01 Civ. 7342, 2003 WL 1807148
    (S.D.N.Y. Apr. 4, 2003)............................................................................4

*Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217
    (S.D.N.Y. 2003) .................................................................................13

*Squeez-A-Purse Corp. v. Stiller v. Silverman*, 31 F.R.D. 261
    (S.D.N.Y. 1962).................................................................................17

*Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724 (2d Cir. 1998) ................................7

*United States v. Mr. Hamburg Bronx Corp.*, 228 F. Supp. 115
    (S.D.N.Y. 1964).................................................................................20

*Williams v. Pfeffer*, 117 F. Supp. 2d 331 (S.D.N.Y. 2000) .................................................... 15-16

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100,
    89 S. Ct. 1562 (1969).........................................................................21

**STATE CASES**

*Bergdorf Goodman, Inc. v. Marine Midland bank*, 97 Misc. 2d 311,
    411 N.Y.S.2d 490 (N.Y. Civ. Ct. 1978) ..................................................22

*Oil City Petroleum Co., Inc. v. Fabac Realty Corp.*, 70 A.D.2d 859,
    418 N.Y.S.2d 51 (N.Y. App. Div. 1979) .................................................22

*Peninsula Nat'l Bank v. Cincotti Constr. Co.*, 49 N.Y.S. 2d 936
    (N.Y. Sup. Ct. 1944), *aff'd*, 268 A.D. 976, 52 N.Y.S. 568
    (N.Y. App. Div. 1944) .......................................................................20

**FEDERAL STATUTES**

Anti-Terrorism Act, 18 U.S.C. §§ 2333, 2338 (2000)........................................................ 12-13

Federal Question Jurisdictional Amendments Act, 28 U.S.C. § 1331
    (2000)............................................................................................ 12-13

Federal Registration of Judgments Statute, 28 U.S.C. § 1963 (2000) ......................... 12-13, 17, 18

Federal Rules of Civil Procedure, Rule 37 ......................................................................... 9, 9-10

Federal Rules of Civil Procedure, Rule 45 ...............................................................................12

**STATE STATUTES**

N.Y. C.P.L.R. §§ 301 (McKinney 1997) ...............................................................................4, 5

N.Y. C.P.L.R. §§ 5225, 5227 (McKinney 1997) ...................................................... 1, 13, 19-20, 21

**TREATISE**

21 Am. Jur. 2d *Creditors' Bills* § 69 (1998) ................................................................................20

Orascom Telecom Holding S.A.E. ("Orascom"), an Egyptian corporation operating in the Middle East, Africa, and South Asia, hereby moves to dismiss the First Amended Complaint ("Amended Complaint") in its entirety with prejudice on a number of jurisdictional and other grounds. This Court has familiarity with this matter as it has previously issued two published opinions in related discovery proceedings under the miscellaneous docket. *See Estate of Ungar v. Palestinian Auth.*, 396 F. Supp. 2d 376 (S.D.N.Y. 2005); *Estate of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541 (S.D.N.Y. 2005) ("November 7, 2005 Decision").[1]

As an initial matter, Orascom submits that the Amended Complaint should be dismissed outright because this Court's prior ruling in the *Estate of Ungar*, 400 F. Supp. 2d 541 — in which this Court held that it lacks personal jurisdiction over Orascom — has preclusive effect here under the doctrine of collateral estoppel. Independently, the Amended Complaint also should be dismissed in its entirety (i) for lack of subject-matter jurisdiction; (ii) for lack of personal jurisdiction over Orascom (separate and apart from collateral estoppel); (iii) because Plaintiffs have failed to state a claim for equitable relief under a creditor's bill or supplemental bill or, alternatively, pursuant to N.Y. C.P.L.R. §§ 5225 and 5227; and (iv) because this Court lacks jurisdiction over the alleged money, property or debt.

---

[1] Orascom respectfully requests that the Court take judicial notice of the record before it in those related proceedings. *See Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 157, 89 S. Ct. 935, 942 (1969) (taking judicial notice of record in related case between same parties); *Kavowras v. New York Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) ("Judicial notice may be taken of public filings . . . .").

<u>**ARGUMENT**</u>

**I.    THIS COURT'S PRIOR RULING THAT IT LACKS PERSONAL JURISDICTION OVER ORASCOM HAS PRECLUSIVE EFFECT UNDER THE COLLATERAL ESTOPPEL DOCTRINE**

Under the collateral estoppel doctrine, this Court's previous holding — that personal jurisdiction over Orascom is lacking and that Plaintiffs are not entitled to jurisdictional discovery of Orascom — precludes Plaintiffs from relitigating those issues here.

**A.    This Court Conclusively Held That It Lacks Personal Jurisdiction Over Orascom**

As a preliminary matter, this Court previously rejected Plaintiffs' argument that the United States, rather than New York, should serve as the basis for jurisdictional contacts. *See Estate of Ungar*, 400 F. Supp. 2d at 548 (holding that examination of Orascom's contacts with the United States as a whole was not warranted because "this proceeding is not brought under the ATA[,] [n]or does the ATA contain any supervening provisions related to enforcement of judgments that would command this Court to apply its wider jurisdictional reach to ancillary Rule 69 proceedings against third parties.") (citing *Peacock v. Thomas*, 516 U.S. 349, 353, 116 S. Ct. 862, 866 (1996)).

Further, Plaintiffs advanced, and the Court considered in detail, various alleged contacts as a potential basis for this Court's personal jurisdiction over Orascom. *Id.* at 549-52. After full briefing, a hearing, and follow-up correspondence from Plaintiffs, the Court issued a decision carefully analyzing each of these alleged jurisdictional contacts, which the Court construed "liberally" (*id.* at 549), and concluded that the alleged contacts — taken separately and as a whole — were insufficient to confer personal jurisdiction over Orascom. *Id.* at 552. In arriving at this conclusion, the Court considered the high standard under *Helicopteros Nacionales de Colombia, S.A. v. Hall*, which requires that contacts must be "continuous and systematic" in

2

order to satisfy due process requirements.  *Estate of Ungar*, 400 F. Supp. 2d at 552 (citing

*Helicopteros*, 466 U.S. 408, 416, 104 S. Ct. 1868, 1873 (1984)); *accord Jazini v. Nissan Motor

Co.*, 148 F.3d 181, 184 (2d Cir. 1998).

Specifically, with respect to the jurisdictional contacts based on the ADR Agreement

with the Bank of New York, this Court held that Orascom's involvement in the ADR program

was insufficient because "having securities listed on a New York exchange, or transacting in

private placements of commercial paper when such placements are made only to a limited group

of buyers, is insufficient to confer general jurisdiction over the seller."  *Estate of Ungar*, 400 F.

Supp. 2d at 550 (citing *Nordic Bank PLC v. Trend Grp. Ltd.*, 619 F. Supp. 542, 565-67

(S.D.N.Y. 1985) (holding private placements insufficient even where "the sale of commercial

paper is an essential aspect of the Nordic defendants' business")).  With respect to Orascom's

alleged lines of credit from New York banks, the Court held that "acquiring a line of credit or

funding, without more, has been held not to constitute 'doing business' within New York for

purposes of the New York long-arm statute."  *Id.* at 550 (citing *Mende v. Milestone Tech., Inc.*,

269 F. Supp. 2d 246, 254 (S.D.N.Y. 2003) and *Landoil Res. Corp. v. Alexander & Alexander

Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990)).

As for jurisdictional contacts premised on the alleged attendance by Orascom

representatives at business conferences in New York and Washington, D.C., this Court held that

attendance at such conferences does not constitute "doing business" in New York for general

jurisdictional purposes.  *See id.* at 550 ("attendance by Orascom officers at two transient business

conferences, each open to anyone interested in their content, is not so 'continuous or permanent'

a presence as to confer general jurisdiction over Orascom").

This Court also held as insufficient for jurisdictional purposes allegations that Orascom purchased goods and services from U.S. suppliers.  The Court held such contacts insufficient to confer personal jurisdiction because "Orascom is a purchaser of goods and services for use in its overseas business only"; "[i]t does not maintain a presence in the United States, and generates no sales or other trade, apart from these purchases, in its dealings with United States companies"; and the contracts "do not appear to constitute a regular course of business."  *Id.* at 551 (citing N.Y. C.P.L.R. § 301 and *Helicopteros*, 466 U.S. at 418, 104 S. Ct. at 1874).

Further, the Court held that Orascom's alleged long-term contracts with U.S. businesses — such as its entering into roaming agreements with U.S. wireless operators and subcontracting part of its network management to a U.S. corporation — were jurisdictionally insufficient because "[n]one of these contracts is with a New York entity" and "these agreements are solely for the provision of services outside the United States."  *Id.*

Because the Court found these alleged contacts to be insufficient in the aggregate, the Court did not need to consider Orascom's further argument that many of the alleged contracts were entered with Orascom's subsidiaries, rather than Orascom itself, and thus could not be relied upon to show that Orascom itself was "doing business" in New York.  *See id.* at 552 n.8 ("Because these contracts do not constitute sufficient jurisdictional contacts, I do not reach the issue of whether these subsidiaries are entities distinct from Orascom itself.").

Finally, this Court held Orascom's $5,000 contribution to a New York nonprofit was similarly insufficient because "[p]roviding funding, without more, does not support a finding of general jurisdiction."  *Id.* at 552 (citing *In re Ski Train Fire*, 343 F. Supp. 2d 208, 216 (S.D.N.Y. 2004)).

This Court ultimately concluded that "[t]he total of Orascom's contacts with the United States is insufficient to satisfy the requirements of due process . . . [because Plaintiffs had] not made a prima facie case that Orascom meets" the *Helicopteros* requirement of a "'continuous and systematic' relationship with the forum." *Id.* at 552; *see also id.* ("Without a presence in New York (or the United States as a whole), sales or operations in the United States, or other relevant and systematic jurisdictional contacts, Orascom's isolated purchases and occasional travel in the United States are not sufficient to subject it to jurisdiction here.").

### B.    This Court's Prior Ruling Collaterally Estops Plaintiffs From Relitigating the Personal Jurisdiction Issue Here

This Court's prior ruling that it lacks personal jurisdiction over Orascom is entitled to preclusive effect in this action, and Plaintiffs are barred from relitigating the same issue here. Under the collateral estoppel doctrine, a judgment in a prior federal proceeding bars a party from relitigating an issue if:

> (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 108 (2d Cir. 2001); *see also Langella v. Bush*, 306 F. Supp. 2d 459, 466 (S.D.N.Y. 2004) (substantially same) (citing *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)). Each of these elements is satisfied here.

First, the issue analyzed in this Court's November 7 Decision — whether personal jurisdiction exists over Orascom under the New York Long-Arm Statute, N.Y. C.P.L.R. § 301, and under the U.S. Constitution — is identical to the issue necessarily before the Court in this action. In the November 7 Decision, Orascom challenged this Court's jurisdiction over it, just as it does in this action. Plaintiffs' claims for relief under a creditor's bill or supplemental bill or,

alternatively, under the New York State turnover provisions depend upon whether the Court has personal jurisdiction over Orascom. Indeed, this Court expressly acknowledged that the analysis of personal jurisdiction in this federal creditor's bill and turnover action "would be much the same." *Estate of Ungar*, 400 F. Supp. 2d at 552 n.9.

Second, the issue of this Court's personal jurisdiction over Orascom was "actually litigated and actually decided" in the prior proceeding. In the November 7 Decision, this Court analyzed each of the five categories of jurisdictional contacts alleged by Plaintiffs and expressly held that such contacts were individually and collectively insufficient to establish a prima facie showing of personal jurisdiction over Orascom. *See id.* at 549-52.

Third, Plaintiffs had a full and fair opportunity to litigate the personal jurisdiction question in the prior proceeding, and this Court recognized as much. *See id.* at 554 n.2 ("Arguments in favor of and against personal jurisdiction over Orascom and its employees have been raised in a number of briefs before this Court . . . .") (citing parties' briefs); *id.* ("This Court considers facts and arguments from all [briefs] in this decision."). Plaintiffs filed no less than four briefs and voluminous accompanying exhibits in support of their personal jurisdiction argument. *See* Pls.' Mem. Opp'n to Mots. to Quash by Non-Party Subpoena Recipients Orascom and Bichara, at 22-23 (July 19, 2005); Pls.' Order to Show Cause & Mem. in Support of Pls.' Mot. for a Subpoena Pursuant to 28 U.S.C. § 1783, at 7-10 (Aug. 23, 2005); Pls.' Mem. of Law in Support of Pls.' Mot. to Strike Declaration or Examine Declarant, at 5-8 (Aug. 30, 2005); Pls.' Mem. Opp'n to Orascom's Mot. to Quash Outstanding Nonparty Subpoenas, at 8-20 (Sept. 21, 2005). In addition, during the September 13, 2005 hearing, the Court heard Plaintiffs' personal jurisdiction arguments. *See* Hr'g Tr. 20-23, 25-26, September 13, 2005. Even after the hearing and full briefing on the personal jurisdiction issue, Plaintiffs made additional jurisdictional

allegations in a letter to the Court, which the Court considered. *See Estate of Ungar*, 400 F. Supp. 2d at 546 nn.3-4.

Finally, the Court's conclusion that it lacked personal jurisdiction over Orascom was the basis for the November 7 Decision quashing the subpoenas directed to Orascom and to its supposed representatives in their official capacities.

Because each element for application of collateral estoppel is met, Plaintiffs are barred from relitigating the personal jurisdiction issue here. *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 731 (2d Cir. 1998) (holding that the D.C. Circuit's prior ruling on service of process and personal jurisdiction "should control under the doctrine of collateral estoppel or issue preclusion"); *Mario Valente Collezioni, LTD v. AAK Ltd*, No. 02 Civ. 0099, 2004 WL 724690, at *5-10 (S.D.N.Y. Mar. 26, 2004) (applying collateral estoppel to a personal jurisdiction ruling); *see also Ins. Corp. of Ireland, LTD v. Compagnie des Bauxites*, 456 U.S. 694, 702 n.9, 102 S. Ct. 2099, 2104 n.9 (1982) ("It has long been the rule that principles of res judicata apply to jurisdictional determinations — both subject matter and personal."). This is so even with Plaintiffs' appeal of the November 7 Decision. *See Flair Broad. Corp. v. Powers*, No. 89 CIV. 2528 & 5185, 1998 WL 247521, at *4 n.7 (S.D.N.Y. May 15, 1998) ("[T]he pendency of an appeal does not preclude the application of collateral estoppel under either federal or New York law.").

### C.    Plaintiffs' New Personal Jurisdiction Allegations Should Not Preclude Application of Collateral Estoppel

Nor can Plaintiffs avoid collateral estoppel by alleging an additional jurisdictional contact and misconduct on the part of Orascom.

The sole additional New York contact alleged in the Amended Complaint — that Orascom has agreed to submit to the jurisdiction of New York state and federal courts in several

past and current contracts (¶ 69(h)) — should not disturb the application of collateral estoppel. A forum selection clause in a contract may result in the waiver of objections to personal jurisdiction as to a party to that contract. *See Ins. Corp. of Ireland, LTD*, 456 U.S. at 703-04, 102 S. Ct. at 2105 (noting that included among situations where personal jurisdiction may be waived are instances in which "parties to a contract [ ] agree in advance to submit to the jurisdiction of a given court") (citation omitted). Waiver of a personal jurisdiction objection, however, would only be available if both Orascom and the Plaintiffs were parties to these contracts. *See Dale v. Banque SCS Alliance S.A.*, No. 02 Civ. 3592, 2004 WL 2389894, at *5 (S.D.N.Y. Oct. 22, 2004) (holding that "the forum selection clause in the correspondent bank account agreement cannot be construed reasonably as blanket consent by [defendant] to be subject to personal jurisdiction in New York in any action brought against it by a person who is not a party to the correspondent bank account agreement"). Thus, Orascom has not waived its personal jurisdiction objections based on alleged forum selection clauses in contracts to which Plaintiffs are not parties.

Furthermore, Plaintiffs should have been aware of this allegation related to forum selection clauses at the time that they were asserting jurisdictional contacts based on these contracts, and are thus precluded from raising the allegation now in order to defeat the application of collateral estoppel. *See Latino Officers Ass'n v. City of New York*, 253 F. Supp. 2d 771, 783-84 (S.D.N.Y. 2003) (rejecting argument that new evidence foreclosed the application of collateral estoppel because much of such evidence was available at the time of the previous proceeding); *see also Liberty Mutual Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 762-65 (8th Cir. 2003) (in holding that district court's ruling had preclusive effect despite new evidence, discussing cases holding that "litigants may not have a second opportunity to prove a fact or make an argument relating to an issue previously decided") (citing cases).

In addition, Plaintiffs' allegation that personal jurisdiction over Orascom is established by "negative inference and estoppel" (Am. Compl. ¶¶ 72-83) is both legally and factually insufficient. The case cited by Plaintiffs for their "negative inference and estoppel" argument is inapposite, arising as it does under Federal Rule of Civil Procedure 37(b)(2)(A), which provides:

> **(b) Failure to Comply with Order.**
> . . .
> (2) *Sanctions by Court in Which Action is Pending*. If ***a party or an officer, director, or managing agent of a party*** or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party ***fails to obey an order to provide or permit discovery***, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> > (A) An order that matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order[.]

Fed. R. Civ. P. 37(b)(2)(A) (emphasis added); *see also Ins. Corp. of Ireland, LTD*, 456 U.S. at 707-09 (analyzing Rule 37(b)). By its plain terms, Rule 37(b) sanctions are available against a "party" who "fails to obey an order to provide or permit discovery." *See Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991) ("Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order."). Since Orascom is neither a party in the Miscellaneous Action nor is it subject to a discovery order, Rule 37(b) sanctions are inapplicable. *See id.* at 1364 (holding that district court's imposition of Rule 37(b) sanctions against Turkish corporation Ekinciler was "improper" because "[t]here was no prior order [compelling discovery] directed to Ekinciler"). In addition, because a subpoena is not

comparable to a court order compelling discovery, Rule 37(b) sanctions are unavailable for noncompliance — even assuming there was noncompliance (rather than defenses to compliance). *See id.* at 1365 ("it would appear inconsistent with the overall scheme of Rule 37 to view a subpoena as constituting 'an order to provide or permit discovery' within the meaning of Rule 37(b)(2)").

Furthermore, in advancing their "negative inference and estoppel" argument, Plaintiffs misstate the record in attempting to justify such relief. First, Plaintiffs assert that the Abaza Declaration, submitted in the Miscellaneous Action prior to this Court's November 7, 2005 ruling, was "patently false and misleading" because it states that "OTH does not do business in New York State" and "OTH does not solicit business . . . in New York State" (Am Compl. ¶ 75). Plaintiffs have previously made the same arguments before this Court. *See* Order to Show Cause and Mem. of Law in Support of Pls.' Mot. to Strike Declaration or Examine Declarant, No. 18 MS 0302, at 5 (Aug. 30, 2005) (characterizing Abaza Declaration as "false" and "mislead[ing]"). Orascom stands by the Declaration now as it did then. *See* Nonparties Orascom Telecom Holding S.A.E. and Khaled Bichara's Opposition to Plaintiffs' Motion to Strike Declaration or Examine Declarant, 18 MS 0302, at 4-9 (Sept. 9, 2005). All of the alleged contracts previously relied upon by Plaintiffs to demonstrate the falsity of the Abaza Declaration did not involve Orascom and a U.S. company and were negotiated and executed outside of the United States. *Id.* at 4-7. Indeed, this Court's November 7 Decision confirms the veracity of the Abaza Declaration. *See Estate of Ungar*, 400 F. Supp. 2d at 551 (holding that "[n]one of these contracts is with a New York entity. In addition, these agreements are solely for the provision of services outside the United States — therefore, these contracts do not constitute 'doing business' in New York for purposes of CPLR § 301.").

Second, Plaintiffs insist that Orascom, again in connection with the Miscellaneous Action, has "unlawfully persuaded" supposed Orascom representatives Hatim El Gammal and Zouhair Khaliq[2] not to comply with their respective subpoenas.  Am. Compl. ¶ 77.  In fact, these individuals have not defied their subpoenas and, irrespective, there is no evidence that Orascom is responsible for the individuals' conduct.  Despite correspondence from Orascom's counsel on December 16, 2005 and despite subsequent telephone communication with personal counsel for Messrs. El Gammal (resident in Egypt) and Khaliq (resident in Pakistan), indicating that the individuals were in the process of finalizing the engagement of counsel to represent them in their individual capacities, Plaintiffs filed on December 27, 2005 a Motion to Compel, to Adjudge in Contempt, to Impose a Sanction for Non-Compliance and for Fees and Costs before the Magistrate Judge.  *See* Mem. in Opp'n to Estate's Mot. To Compel at 2-3 (S.D.N.Y. Jan. 19, 2006).

In fact, Messrs. El Gammal and Khaliq have made efforts to comply with their respective subpoenas.  For example, on January 25, 2005, counsel for Messrs. El Gammal and Khaliq informed counsel for the Estate that "Messrs. El Gammal and Khaliq are searching for any responsive documents, and we have been working with them to ensure that their search is appropriate.  If they locate responsive documents, they will produce them shortly."  *See* Letter from William M. Sullivan and Christopher M. Curran to David J. Strachman dated January 25, 2006 (attached hereto as Ex. A).  After numerous discussions with counsel about the document requests in the subpoenas and after diligent efforts to search for responsive documents, Messrs. El Gammal and Khaliq determined that they did not have any responsive documents.  Upon

---

[2] Mr. Khaliq is not a representative of Orascom, but rather is the Chief Executive Officer of Mobilink, a subsidiary of Orascom.  *See* Orascom Reply in Support of Mot. to Quash Nonparty Subpoenas at 1 n.1 (Sept. 26, 2005).

learning that their search had been exhaustive and recovered no responsive documents, counsel for Messrs. El Gammal and Khaliq informed Plaintiffs' counsel. *See* Letter from William M. Sullivan to Robert J. Tolchin dated February 7, 2006 (attached hereto as Ex. B). Plaintiffs rely on *LiButti v. United States*, 107 F.3d 110, 123 (2d Cir. 1997), for the argument that Messrs. El Gammal and Khaliq's "refusal" to comply with their respective subpoenas warrants drawing an adverse inference against Orascom (Am. Compl. ¶ 79), but that argument is without merit because the individuals — whose actions in any event are not attributable to Orascom — have complied with the document aspect of their subpoenas and have raised their legally available defenses to compliance with the testimonial aspect pursuant to Rule 45(c) and (e). *See Estate of Ungar*, 400 F. Supp. 2d at 553-54 (noting that modification of the El Gammal and Khaliq subpoenas may be available under Rule 45(c)).

Third, Plaintiffs also insist that Orascom, again in connection with the Miscellaneous Action rather than this action, has "unlawfully persuaded" U.S.-based corporate third parties not to comply with their subpoenas (Am. Compl. ¶ 80). In fact, Orascom merely engaged in the perfectly reasonable act of alerting U.S. corporate non-parties of this Court's ruling that it lacked personal jurisdiction over Orascom based on the alleged contacts related to such non-parties. Orascom was well within its rights to communicate with other recipients of subpoenas from Plaintiffs, particularly when these recipients were alarmed by the overbearing conduct of Plaintiffs' counsel in his own direct communications with these non-parties. There is no evidence whatsoever that Orascom acted improperly or even advised others to disregard subpoenas. Thus, Orascom has not engaged in any improper conduct.

## II.    THIS COURT LACKS SUBJECT-MATTER JURISDICTION

Plaintiffs base this Court's subject-matter jurisdiction on a variety of grounds: (i) federal question jurisdiction under the Anti-Terrorism Act ("ATA"), 18 U.S.C. §§ 2333, 2338 and

28 U.S.C. § 1331; (ii) the federal registration of judgments statute, 28 U.S.C. § 1963; (iii) the Court's ancillary enforcement jurisdiction; and (iv) the Court's equity powers. Am. Compl. ¶¶ 5, 35. None is a proper basis for this Court's exercise of subject-matter jurisdiction.

### A. The ATA Cannot Serve As The Basis For Subject-Matter Jurisdiction In This Case

The ATA cannot serve as the basis for this Court's subject-matter jurisdiction over Plaintiffs' claims against Orascom, a third-party garnishee. The ATA creates a federal cause of action for acts of international terrorism. *See Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 225 (S.D.N.Y. 2003) ("18 U.S.C. § 2333 creates a cause of action for the 'estate, survivors, or heirs' of any U.S. national killed by an act of international terrorism"). Plaintiffs' Amended Complaint does not contain any allegation against Orascom related to international terrorism, but instead, seeks equitable relief under a creditor's bill or supplemental bill or, alternatively, for turnover pursuant to N.Y. C.P.L.R. §§ 5225 and 5227. Thus, the ATA may not serve as the basis for federal question jurisdiction in this action. *See Estate of Ungar*, 400 F. Supp. 2d at 548 (rejecting Plaintiffs' claim that the ATA provides "the appropriate measure of this Court's jurisdiction" because "this proceeding is not brought under the ATA," and the ATA lacks "any supervening provisions related to the enforcement of judgments"); *see also Peacock*, 516 U.S. at 354, 116 S. Ct. at 867 (because plaintiff "alleged no 'underlying' violation of any provision of ERISA [by the defendant] . . . , neither ERISA's jurisdictional provision . . . , nor 28 U.S.C. § 1331 supplied the District Court with subject-matter jurisdiction over this suit").

### B. This Court Lacks Ancillary Enforcement Jurisdiction

Because the present federal action against Orascom involves claims that were not before the judgment court in the ATA action, this proceeding is not "ancillary," but instead requires that

this Court have an independent basis of subject-matter jurisdiction. *See Peacock*, 516 U.S. at 359, 116 S. Ct. at 869 (holding that the district court lacked ancillary jurisdiction over Plaintiffs' second suit because "[t]his is a new action based on theories of relief that did not exist, and could not have existed, at the time the court entered judgment in the ERISA case").

In *Peacock*, the plaintiff prevailed in an ERISA claim against his employer, a corporation, in district court, and then sought to rely on ERISA as the basis for ancillary jurisdiction in a second suit seeking to pierce the corporate veil between the corporation and its officer and shareholder. The Supreme Court concluded that the plaintiff's "veil-piercing claim does not state a cause of action under ERISA and cannot independently support federal jurisdiction." 516 U.S. at 353-54, 116 S. Ct. at 866. The plaintiff's attempt to extend liability for payment of the ERISA judgment from the corporation to its officer and shareholder under a veil-piercing theory did not fall within the district court's ancillary enforcement jurisdiction because "[o]ther than the existence of the ERISA judgment itself, this suit has little connection to the ERISA case." *Id.* 516 U.S. at 359, 116 S. Ct. at 869.

Likewise here, Plaintiffs seek to compel Orascom to turn over purported money, property, or debt allegedly owed to the PIF, under a veil-piercing or alter-ego theory that cannot independently support federal question jurisdiction. The present proceeding is thus not "ancillary to the judgment in the former suit." *Id.* 516 U.S. at 358, 116 S. Ct. at 868. Rather, it is "entirely new and original," and seeks "relief . . . of a different kind or on a different principle than that of the prior decree." *Id.* (internal quotations and citations omitted).

In particular, Plaintiffs pursue this civil action on theories that did not exist at the time of the entry of the ATA judgment — specifically, that the PIF (which was ***not*** a party to the Rhode Island action and with which Orascom was allegedly involved in a transaction) and other entities

14

are "shell funds" or "aliases" of the PA. *See* Am. Compl. ¶¶ 16, 46, 50-53. Plaintiffs alternatively allege that, if the PIF has a cognizable personality or corporate identity separate from the PA, then it is "wholly-owned and controlled by the PA with no purpose or business other than to act as investment vehicles for the PA" (*id.* ¶ 54); it is an agent and/or trustee and/or fiduciary of the PA (*id.* ¶ 55); or it constitutes and serves as a constructive or resulting trust for the PA (*id.* ¶ 56). In addition, Plaintiffs allege that the PIF was "capitalized by the PA without consideration" (*id.* ¶ 57); that "all assets and property nominally titled to and/or owned by the PIF were conveyed to the PIF by the PA without fair consideration, during the period that the PA was a defendant in the underlying action for money damages in the United States District Court in Rhode Island" (*id.* ¶ 58); that none of the Aliases and Shell Funds own any property or assets of their own (*id.* ¶ 59); and that "any and all assets and property of any type designated or titled to, or held in, the name of the Aliases and Shell Funds, are legally, beneficially and equitably owned by the PA" (*id.* ¶ 60), and "legally, beneficially, and equitably owned, due and payable to the PA" (*id.* ¶ 61).

Under *Peacock*, this Court lacks ancillary jurisdiction because Plaintiffs' veil-piercing and alter-ego claims require an independent basis of subject-matter jurisdiction. *See* 516 U.S. at 357, 116 S. Ct. at 868 ("We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment."); *see also Epperson*, 242 F.3d at 104 (acknowledging that "an action to establish liability on the part of a third party . . . must have its own source of federal jurisdiction"); *Manway Constr. Co. v. Housing Auth.*, 711 F.2d 501, 505 (2d Cir. 1983) ("Even at the farthest reaches of ancillary jurisdiction, we have not allowed district courts to consider claims so distinct as here from the underlying basis for federal jurisdiction."); *Williams v.*

*Pfeffer*, 117 F. Supp. 2d 331, 335 (S.D.N.Y. 2000) (noting that "*Peacock* specifically listed civil conspiracy, fraudulent conveyance and veil piercing claims as examples of new and original theories that could not be maintained in subsequent enforcement actions against third parties without an independent basis for subject matter jurisdiction") (internal quotations omitted); *id.* (holding that subject-matter jurisdiction was lacking because "petitioner seeks to impose obligations on persons and entities not subject to the original federal judgment based upon [various theories including] alter ego"); *accord Nat'l Westminster Bank v. Cheng*, 751 F. Supp. 1158, 1160 (S.D.N.Y. 1990).

Indeed, in oral argument before this Court, Plaintiffs conceded that this Court lacks such ancillary enforcement jurisdiction:

> In aid of enforcing the federal judgment, we have brought a turnover proceeding next door [in State Court]. The reason why we brought it there has to do with the laws governing subject matter jurisdiction.
>
> There are some claims in that turnover proceeding, ***particularly the claim of alter ego analysis***, which is only one of the claims presented there. ***The law seems clear to us in the Second Circuit that there is no subject matter jurisdiction to bring that claim here.*** Therefore, we were constrained to bring it [in State Court] . . . .

Hr'g Tr. 23, Sept. 13, 2005 (emphasis added); *see also* Pls.' Mem. Opp'n Orascom's Motion to Quash Outstanding Nonparty Subpoenas, at 21 n.9 (stating "plaintiffs filed the State Court petition, *inter alia*, because certain of these alternative avenues of relief (alter ego, veil-piercing) are not within this Court's subject matter jurisdiction") (citing *Epperson*, 242 F.3d 100).

Similarly, this Court's equity powers (Am. Compl. ¶ 5) may not serve as the basis for subject-matter jurisdiction because an independent basis for federal jurisdiction is required. *See In re "Agent Orange" Prod. Liab. Litig.*, 506 F. Supp. 737, 740 (E.D.N.Y. 1979) (holding that "[f]ederal courts have no independent 'equity jurisdiction'; they may grant equitable relief, but

not unless there is an independent statutory basis for federal jurisdiction, which is conferred only by specific congressional enactment"), *rev'd on other grounds*, 635 F.2d 987 (2d. Cir. 1980); *see also Sansom Comm. v. Lynn*, 735 F.2d 1535, 1538 (3d Cir. 1984) ("[A] district court cannot wield its equitable power beyond the realm of its federal subject matter jurisdiction.").

### C.    The Federal Registration Statute, 28 U.S.C. § 1963, Does Not Confer Subject-Matter Jurisdiction In This Case

Plaintiffs also improperly rely on the federal judgment registration statute, 28 U.S.C. § 1963, as a basis for subject-matter jurisdiction (Am. Compl. ¶ 5).  This statute provides:

> A judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . when the judgment has become final . . . . A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

28 U.S.C. § 1963.  "A primary purpose of this statute is to enable a successful litigant to enforce a money judgment in a District Court other than that which rendered the judgment without the necessity of instituting a *de novo* action" against the judgment debtor.  *Squeez-A-Purse Corp. v. Stiller*, 31 F.R.D. 261, 263 (S.D.N.Y. 1962).

Nothing in the language of the statute remotely suggests that it confers federal question jurisdiction.  Indeed, courts have held that § 1963 may only serve as the basis for subject-matter jurisdiction if the claim at issue relates to the registration of the judgment itself, for instance, a claim that § 1963 has been violated.  *See Oakes v. Horizon Fin., S.A.*, 259 F.3d 1315, 1317 (11th Cir. 2001) (holding that a substantial federal question is presented, and thus federal jurisdiction exists, where a foreign judgment has been registered in violation of 28 U.S.C. § 1963"); *Sephus v. Gozelski*, 864 F.2d 1546, 1549 (11th Cir. 1989) (vacating and remanding with directions to dismiss action because the district court lacked subject-matter jurisdiction under the registration of judgment statute, 28 U.S.C. § 1963); *id.* at 1548 ("It is one thing to say that the registration of

judgments statute grants jurisdiction to set aside an improperly registered judgment. . . . It is quite different to say that 28 U.S.C. § 1963 confers jurisdiction . . . .").  Accordingly, because this action does not involve allegations that the federal registration statute was violated, Plaintiffs may not rely on § 1963 as a basis for subject-matter jurisdiction.

## III.     THIS COURT LACKS PERSONAL JURISDICTION OVER ORASCOM

As held in the November 7 Decision, this Court lacks personal jurisdiction over Orascom, a telecommunications company incorporated and headquartered in Egypt, and traded on the London stock exchange (Am. Compl. ¶¶ 13, 36, 38(b)).  In particular, Plaintiffs' jurisdictional allegations (*id.* ¶¶ 14-15, 37, 67-71) are individually and collectively insufficient to make out a prima facie showing of personal jurisdiction over Orascom.  *See Estate of Ungar*, 400 F. Supp. 2d at 549-52.  In addition, New York, not the United States as a whole, is the proper forum for assessing Orascom's jurisdictional contacts.  *See id.* at  548.

This Court has already analyzed all but one of Plaintiffs' New York jurisdictional allegations, which are now repeated in the Amended Complaint, and found them insufficient. And as discussed in Part I, the only new allegation of a New York contact — that this Court has personal jurisdiction over Orascom because it has allegedly agreed to submit to the jurisdiction of New York state and federal courts in several past and current contracts (Am. Compl. ¶ 69(h)) — is also without merit.  *See, e.g.*, *Dale*, 2004 WL 2389894, at *5.

Plaintiffs' alleged jurisdictional contacts are insufficient to establish personal jurisdiction over Orascom.  Thus, even if collateral estoppel somehow did not operate to preclude Plaintiffs from asserting personal jurisdiction over Orascom based on New York contacts, there would be

no reason for this Court to deviate from its carefully considered conclusion that it lacks personal jurisdiction.[3]

## IV.  PLAINTIFFS FAIL TO STATE A CLAIM FOR A CREDITOR'S BILL OR FOR TURNOVER

### A.  Plaintiffs' Claim For A Creditor's Bill Should Be Dismissed

Plaintiffs' claim for equitable relief under a creditor's bill or supplemental bill fails because (i) Plaintiffs have an adequate remedy at law, and (ii) Plaintiffs have not obtained any judgment against the PIF.  *See Grupo Mexicano v. Alliance Bond Fund*, 527 U.S. 308, 319, 119 S. Ct. 1961, 1968 (1999) (explaining that the "equitable action known as a 'creditor's bill' . . . was used . . . to permit a judgment creditor . . . to reach equitable interests not subject to execution at law . . . .").

First, a claim for a creditor's bill or supplemental bill is properly dismissed if a judgment creditor has an adequate remedy at law.  *See Hunter v. Youthstream Media Networks, Inc.*, 241 F. Supp. 2d 52, 57 (D. Mass. 2002) (holding that "[s]ince [plaintiff] has not made a showing that he lacks an adequate remedy at law, he is not entitled to relief under the general equity powers of the court."); *Bourget v. Gov't Employees Ins.*, 287 F. Supp. 108, 110 (D. Conn. 1968) (holding that because "plaintiff has an adequate statutory remedy, there is no justification for permitting plaintiff to invoke the Court's equitable powers to maintain this action in the nature of a creditor's bill.").

Plaintiffs have an adequate remedy at law pursuant to N.Y. C.P.L.R. §§ 5225 and 5227, as reflected in Plaintiffs' own Second Claim for Relief (Am. Compl. ¶¶ 94-98) and in their pending state-court enforcement proceedings, *see* Notice of Petition and Verified Petition

---

[3]  For purposes of this argument, Orascom incorporates by reference and reasserts its arguments on personal jurisdiction from the prior proceedings under miscellaneous docket number 18 MS 0302.

pursuant to CPLR 5225 and 5227 (N.Y. Sup. Ct. June 9, 2005). Plaintiffs have also sought to reach the alleged property, money or debt through a Sheriff's Levy and Execution through the New York Supreme Court. Indeed, a creditor's bill may no longer even be available in this jurisdiction. *See United States v. Mr. Hamburg Bronx Corp.*, 228 F. Supp. 115, 124 (S.D.N.Y. 1964) ("Supplementary proceedings are created by statute to replace the former procedure of filing a creditor's bill in equity."); *Peninsula Nat'l Bank v. Cincotti Constr. Co.*, 49 N.Y.S. 2d 936, 938 (N.Y. Sup. Ct. 1944) (same), *aff'd*, 268 A.D. 976, 52 N.Y.S. 568 (N.Y. App. Div. 1944).

As for Plaintiffs' claim for a supplemental bill, historically, the purpose of a supplemental bill in equity was to support the enforcement of the creditor's bill when changes in circumstances occurred subsequent to its filing. *See* 21 Am. Jur. 2d *Creditors' Bills* § 69 (1998) ("The function of a supplemental bill in equity is to support the cause of the suit existing when the original bill was filed; thus, changes in circumstances, occurring after the filing of the original bill, may properly be brought before the court by amendment or by supplemental bill in the nature of an amendment."). Since Plaintiffs' claim for a creditor's bill fails, their claim for a supplemental bill is equally unavailing.

Furthermore, Plaintiffs' claims for a creditor's bill or supplemental bill should be dismissed as against Orascom because Plaintiffs do not have any judgment against the PIF. *See Estate of Ungar*, 400 F. Supp. 2d at 548 ("The Second Circuit has held that a judgment may not be enforced against third parties' subsidiaries such as the PPF and PIF, absent strong evidence of corporate impropriety.") (citing *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61-62 (2d Cir. 2004), *cert. denied*, -- U.S. --, 125 S. Ct. 2270 (2005)). *See also JSC Foreign Econ. Ass'n v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 389 (S.D.N.Y. 2003) ("Before the plaintiff can

seek equitable relief in enforcing the prior judgment, it must prove the legal liability of Reich and Jossem as alter egos.") (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112, 89 S. Ct. 1562, 1570 (1969) (finding injunction issued against alleged alter ego of judgment debtor improper where alter ego status had not yet been litigated)); *Algonquin Power Corp. v. Trafalgar Power, Inc.*, No. CIVA5:00CV1246, 2000 WL 33963085, at *15 (N.D.N.Y. Nov. 8, 2000) ("The [Supreme] Court noted that while historically there was an equitable action known as a 'creditor's bill' which permitted a judgment creditor to discover a debtor's assets, reach assets not otherwise subject to execution, and set aside fraudulent conveyances, as a general rule a creditor's bill could only be invoked by a creditor who had already obtained a judgment establishing debt.") (citing *Grupo Mexicano*, 527 U.S. at 319-20, 119 S. Ct. at 1968-69).

### B.     Plaintiffs' Statutory Claim For Turnover Should Be Dismissed

Plaintiffs' claim for turnover should be dismissed because Plaintiffs have not shown or alleged that the Amended Complaint in this federal action was served on the judgment debtors, the PA and the PLO. Sections 5225 and 5227 of the N.Y. Civil Practice Law and Rules both require that "[n]otice of the proceeding shall also be served upon the judgment debtor." N.Y. C.P.L.R. §§ 5225(b) and 5227; *Phoenician Trading Partners LP v. Iseson*, No. CV-04-2178, 2004 WL 3152394, at *4 (E.D.N.Y. Dec. 11, 2004) ("Because the proceeding divests the judgment debtor of any rights to the property in possession of the third party, due process requires proper notice of the turnover proceeding."). Such notice must be served either "in the same manner as a summons or by registered or certified mail, return receipt requested." N.Y. C.P.L.R. §§ 5225(b) and 5227.

Here, there is no indication in the docket or in the served papers that Plaintiffs have complied with the requirement for service on the judgment debtors. Failure to serve the judgment debtors is grounds for dismissal of the turnover claim. *See Phoenician Trading*

*Partners LP*, 2004 WL 3152394, at *4 (holding that "[t]o be entitled to judgment pursuant to § 5225 or § 5227, [the judgment creditor] must also have served . . . the judgment debtor . . . with notice of the proceeding[,] [and] [f]ailure to serve the judgment debtor renders the proceeding jurisdictionally defective") (citing *Oil City Petroleum Co. v. Fabac Realty Corp.*, 70 A.D.2d 859, 859, 418 N.Y.S.2d 51 (N.Y. App. Div. 1979));  *Bergdorf Goodman, Inc. v. Marine Midland Bank*, 97 Misc. 2d 311, 313, 411 N.Y.S.2d 490, 491 (N.Y. Civ. Ct. 1978) (holding that "there must be ***strict compliance*** with the provisions for service upon the judgment debtor" and that "improper notice to the judgment debtor alone would be sufficient ground to dismiss the petition") (emphasis added).

## V.    THIS COURT LACKS JURISDICTION OVER THE ALLEGED MONEY, PROPERTY OR DEBT

This Court lacks jurisdiction over the very money, property or debt, which Orascom is alleged to hold in favor of the PIF, because courts may not issue orders attaching or executing on assets located outside their territorial jurisdiction.  *See Fidelity Partners, Inc. v. Philippine Export & Foreign Loan Guar. Corp.*, 921 F. Supp. 1113, 1120 (S.D.N.Y. 1996) ("the issuance of a restraining order and an order of execution . . . requires that the property sought to be levied against exist within the jurisdiction") (collecting cases); *Koehler v. Bank of Bermuda*, No. M18-302, 2005 WL 551115, at *11 (S.D.N.Y. Mar. 9, 2005) ("It is a well established principle that a New York Court cannot attach property not within its jurisdiction.") (citing cases);  *Sara Lee Corp. v. Gregg*, No. 1:02CV00195, 2002 WL 1925703 at *1-2 (M.D.N.C. Aug. 15, 2002) (holding that a writ of attachment cannot reach property throughout North Carolina, but only such property existing within the district).

This territorial limitation on the Court's jurisdiction over a garnishee's money, property or debt applies even if the Court has personal jurisdiction over the potential garnishee in

question. *See Koehler*, 2005 WL 551115, at *13 (holding that even if court had personal jurisdiction over garnishee, neither N.Y. C.P.L.R. § 5225 nor § 5227 authorize the court to order garnishee to transfer property presently located in Bermuda to judgment creditor); *see also Mones v. Commercial Bank of Kuwait*, No. 18 Misc. 0302, 2005 WL 1653930, at *4 (S.D.N.Y. July 12, 2005) ("Even if the Court had jurisdiction over [respondent] CBK, the Court lacked authority to order CBK to transfer assets from Kuwait into the Southern District of New York.").

Here, Plaintiffs have not alleged that the purported money, property or debt at issue is located in the Southern District of New York or, for that matter, within the United States. Rather, the Amended Complaint's own allegations indicate that the alleged transactions at issue were conducted entirely overseas (*see* Am. Compl. ¶¶ 38-46) and, as Orascom argued in its motions to quash before this Court, even the press releases upon which Plaintiffs rely to pursue Orascom as a potential garnishee suggest that the purported assets at issue are located outside the United States. *See* Orascom's Mem. in Support of Nonparty Orascom's Mot. to Quash Outstanding Nonparty Subpoenas, at 4 (Sept. 11, 2005) (citing Pls.' Opp'n to Orascom and Bichara's Mots. to Quash at Exs. I & J (describing overseas transactions between Orascom and the Palestinian Funds related to Orascom Telecom Algeria and Orascom Telecom Tunisia)).

Indeed, as Orascom previously established, Orascom does not hold any property in New York or elsewhere in the United States, let alone any property alleged to belong to the judgment debtors or in which the judgment debtors have an interest. *See* Orascom's Consol. Reply Ex. 8 (Abaza Decl.) ¶ 8. Notably, in Plaintiffs' Motion to Strike the Abaza Declaration, they did not even challenge Mr. Abaza's statement that Orascom does not hold property in New York or elsewhere in the United States.

## CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended Complaint should be dismissed in its entirety with prejudice.

Dated: February 13, 2006                    Respectfully submitted,

**WHITE & CASE** LLP

By:  /s/ Christopher M. Curran
     Christopher M. Curran (CC-4779)
     Nicole E. Erb (NE-7104)
     701 Thirteenth Street, N.W.
     Washington, D.C. 20005
     (202) 626-3600

     *Counsel for Orascom Telecom Holding S.A.E.*

24