```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____
```

LAW OFFICE OF

# JAROSLAWICZ & JAROS

150 William Street, 19th Floor
New York, New York 10038

(212) 227-2780

**RECEIVED MAR 10 2006 — CHAMBERS OF COLLEEN McMAHON**

DAVID JAROSLAWICZ
(NY, FA & CA BARS)
ABRAHAM JAROS

ROBERT J. TOLCHIN
OF COUNSEL
RJT@tolchinlaw.com

March 10, 2006

**MEMO ENDORSED**

BY FAX
Fax: (914) 390-4152
Hon. Colleen McMahon
United States District Judge
United States District Court for the Southern District of New York
300 Quarropas Street, Room 533
White Plains, New York 10601-4150

*[Handwritten endorsement:] Oh, please! Do you think I'll pay attention to ANY of this? I have ruled. Let it be.*

Re:  *Estate of Ungar v. Orascom Telecom Holding S.A.E., et al.*,
     Docket No. 05-CV-7765 (CM) (LMS)

Dear Judge McMahon,

    We write in response to the letter from Orascom's counsel Christopher Curran, Esq., dated March 9, 2006, in which Mr. Curran reacted to issues relating to Your Honor's order of March 3, 2006. That order adjourned Orascom's motion to dismiss this action until conclusion of the depositions of Orascom's Chairman and officers.

    Initially, we note that in Mr. Curran's letter, Orascom does not actually seek any relief. The letter merely editorializes that an adjournment "may not be warranted." Since no actual relief is sought, Mr. Curran's letter necessitates no further action by Your Honor. (Indeed, Mr. Curran identifies the "more critical[]" purpose of his letter as being to "set the record straight," specifically any "misimpression" Your Honor may have about Orascom's conduct.)

    While we understand that the Court has better things to do than deal with exchanges of letters that merely "set the record straight," we feel constrained to respond to Mr. Curran's letter, lest the Court conclude that we agree with "the record" as he presents it. *[Handwritten: correct]*

Copies mailed / handed / faxed to counsel  3/10/06

JAROSLAWICZ & JAROS

We also note that Mr. Curran's letter does not even allege any prejudice from the adjournment Your Honor granted, which is unsurprising, since Orascom is merely a stakeholder here.

Mr. Curran's letter points out that it has also sought to dismiss for lack of subject-matter jurisdiction, hinting (but stopping short of actually requesting) that the Court should bifurcate the briefing and disposition of the motion to dismiss. We believe that bifurcation would be a colossal waste of the time and resources of both the Court and the parties, since the subject-matter jurisdiction prong of Orascom's motion is facially frivolous: the existence and scope of this Court's ancillary subject-matter jurisdiction to enforce a judgment have been clearly delineated in *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100 (2d Cir. 2001). The Ungars assert that the debts owed by Orascom are assets of judgment-debtor Palestinian Authority itself (though nominally titled in the names of various aliases), which assertion conforms fully with *Epperson*'s holding that the ancillary enforcement jurisdiction of the federal courts permits proceedings to reach "assets of the judgment debtor even though the assets are found in the hands of a third party." Id. at 106. See also e.g., *Dulce v. Dulce*, 233 F.3d 143, 147 n. 5 (2d Cir. 2000) ("Subsequent proceedings necessary to enforce a judgment may be held involving persons not party to the original lawsuit. The primary limit on the exercise of such ancillary jurisdiction is that it may not be used to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment.") (internal quotes and cite omitted).

Since the Ungars are not seeking to impose liability on third-parties (e.g. through alter ego[1] or veil-piercing claims), but only to reach assets of the PA itself held by or titled to third parties (e.g., through doctrines such as resulting trust, constructive trust and fraudulent conveyance) this Court's subject-matter jurisdiction is not even debatable under well established precedent and Orascom's motion to dismiss on this ground is an obvious exercise in futility. Therefore, separate briefing and disposition of that prong of Orascom's motion would be wasteful, dilatory and inefficient.

Orascom's letter also objects to our characterization of it as being indebted to the PA. Aside from the fact that this is a merits issue irrelevant at this pleading stage where the factual allegations of plaintiffs' pleadings must be accepted as

---

[1] The claim on page 4 of the Orascom letter that the Ungars are asserting an "alter ego" claim is a mis-statement, and nothing but an attempt to put words in the Ungars' mouths and create a convenient "straw man." The Ungars are well aware (as Mr. Curran knows) that alter ego claims are not within the ancillary enforcement jurisdiction of a federal court.

JAROSLAWICZ & JAROS					March 10, 2006
							Page 3 of 5

true, we would respectfully point out that (a) defendant Palestine Investment Fund ("PIF"), to which the vast majority of the Orascom debt at issue is nominally titled (90 percent according to our information) has defaulted this action and the Ungars' application to instruct the Clerk to enter the PIF's default under Fed. R. Civ. P. 55(a) is pending before Your Honor; and (b) the PA itself has identified the debt nominally titled to the PIF as an asset owned by the PA and available for the satisfaction of judgments against the PA. See First Amended Complaint at ¶¶ 61-65.[2]

Orascom further "submits that it would be most anomalous" for the Court to adjourn the motion to dismiss until completion of the depositions of Messrs. Sawiris, El-Gammal and Khaliq, since, Orascom claims, the Court has already ruled in its decision of November 7, 2005, that the Ungars are not entitled to jurisdictional discovery.

This argument is meritless for multiple reasons:

First, the November 7 decision did not relate to "jurisdictional discovery" at all, but to a subpoena. Jurisdictional discovery occurs in the context of an action, and the Ungars have not yet sought jurisdictional discovery in the turnover action against Orascom. Moreover, as Your Honor recently ruled, a prima facie showing is *not* required for jurisdictional discovery. *Smit v. Isiklar Holding A.S.* 354 F. Supp. 2d 260, 263 (S.D.N.Y. 2005) ("[I]f plaintiff has not pleaded a *prima facie* showing of personal jurisdiction, a court may order limited discovery targeted at the missing jurisdictional elements, if plaintiff has shown that such an exercise would serve to *fill any holes* in its showing.") (quotes omitted).

Second, the Court's exercise of its personal jurisdiction over Messrs. Sawiris, El-Gammal and Khaliq in their individual capacities is utterly unrelated to the assertion of personal jurisdiction over Orascom itself.

Third, Magistrate Judge Smith's decision of January 5, 2006, which was subsequently affirmed *in toto* by Your Honor, expressly held that the "question of whether Orascom is in fact subject to the personal jurisdiction of this Court must be resubmitted to Judge McMahon for her reconsideration, should the Plaintiffs choose to

---

[2] The PA identified the debt at issue here as a PA asset available for satisfaction of judgments against the PA in a series of sworn affidavits submitted by the PA in civil suits pending in Israel (copies of the affidavits in our possession), in support of successful motions filed by the PA in the Israeli courts to vacate or reduce the amount of prejudgment attachments that had been imposed on the PA in those proceedings. The Ungars' right to execute against this debt is therefore foregone, and so the failure of the PA or PIF to appear or defend is unsurprising.

JAROSLAWICZ & JAROS

March 10, 2006
Page 4 of 5

do so, after the deposition of the Respondent is held pursuant to this order." *Estate of Ungar v. Palestinian Authority et al.*, ___ F. Supp. 2d ___, 2006 WL 225839 at *6 (S.D.N.Y. 2006). Notably, while Orascom filed objections to other parts of this decision, it did not object to this holding, and so waived the very argument it seeks to now assert.

Fourth, the Court's decision to revisit the question of personal jurisdiction (which, as noted, Orascom failed to object to and so can no longer contest) reflects the well-established rule that jurisdictional rulings made without the benefit of discovery (like the ruling quashing the subpoena on Orascom) have no preclusive effect. *See e.g. Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357 (3rd Cir. 1983) (dismissal for lack of personal jurisdiction not preclusive when plaintiff did not have benefit of jurisdictional discovery); *Sprecher v. Graber*, 716 F.2d 968 (2d Cir. 1983) (same).

Thus, there is nothing "anomalous" whatsoever about Your Honor's order granting the adjournment. The only "anomaly" here is Orascom's attempt to relitigate issues it already lost and/or waived.

Finally, while Orascom's letter attempts to assume a tone of staid reasonableness, and to project to the Court an aura of responsibility and good faith, its actions speak louder and more candidly than its words.

We will not waste the Court's time with a detailed recitation the Ungars' vain attempts to obtain compliance with the subpoenas on Messrs. El-Gammal and Khaliq which Your Honor upheld over four months ago. The bottom line is that there still has been no compliance, and that in her decision of February 23, 2006, Magistrate Smith was constrained to "reemphasize that the nonparty-deponents are under an obligation to comply with the subpoenas" and to expressly warn them that sanctions might well be imposed if there is any further "undue delay" in compliance.

Orascom's letter seeks to excuse this continued non-compliance by pointing to the "Motion to Modify Subpoena" filed days ago by El-Gammal and Khaliq, which Orascom claims, was anticipated by Your Honor's statement in the November 7 decision that "[t]here are no obvious grounds for quashing, rather than modifying, the subpoenas under Rule 45(c) before this Court."

This "Motion to Modify" is itself clear evidence of Orascom's bad-faith approach. Even assuming, as Orascom argues, that Your Honor's reference in the November 7 decision was an invitation to file a motion to modify, it is absolutely clear from the context that that the "modification" referred to was a change in the venue of the depositions.

JAROSLAWICZ & JAROS

March 10, 2006
Page 5 of 5

   Yet, the "Motion to Modify" that has now been filed does not seek to modify the depositions, but rather <u>to quash the depositions entirely</u>.

   Thus, this is nothing but a motion to quash labeled as a "motion to modify" in order to "piggyback" on Your Honor's reference to modification in the November 7 decision. Moreover, since Messrs. El-Gammal and Khaliq have already asserted that they hold no responsive documents (an assertion we disbelieve and intend to test if the depositions ever proceed) the motion to quash the depositions is in fact a motion to quash the subpoenas in their entirety.

   We thank the Court for its efforts in this matter.

            Respectfully yours,

            Robert J. Tolchin

cc: Christopher Curran, Esq.