# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- X

THE ESTATE OF YARON UNGAR by and through its
Administrator, DAVID STRACHMAN; DVIR UNGAR,             Case No. 05-CV-7765 (CM) (LMS)
minor, by his guardians and next friends, YISHAI
UNGAR, minor, by his guardians and next friends,
PROFESSOR MEIR UNGAR, JUDITH UNGAR,
individually and in their capacity as legal guardians of
Plaintiffs DVIR UNGAR and YISHAI UNGAR; RABBI
URI DASBERG, and JUDITH DASBERG, in their capacity
as legal guardians of Plaintiffs DVIR UNGAR and
YISHAI UNGAR; AMICHAI UNGAR; DAFNA UNGAR;
and MICHAL COHEN,

                         Plaintiffs,

                                                           **FIRST AMENDED <u>COMPLAINT</u>**

                    -against-

ORASCOM TELECOM HOLDING S.A.E (a/k/a
"Orascom Telecom" a/k/a "OTH") and
THE PALESTINE INVESTMENT FUND (a/k/a
"Palestinian Investment Fund" a/k/a "Sharekat Sundouk
al-Istithmar al-Filistinee")

                         Defendants.

-------------------------------------------------------------------------- X

        PLAINTIFFS, complaining of the Defendants, by their attorneys,

JAROSLAWICZ & JAROS, allege for their complaint as follows:

## NATURE OF PROCEEDING AND RELIEF REQUESTED

1.      Plaintiffs hold a final judgment in excess of $116,000,000 against the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") that was entered by the United States District Court for the District of Rhode Island on July 13, 2004, and thereafter registered in this Court pursuant to 28 U.S.C. § 1963 as Docket No. 18 MS 0302.

2.      Upon information and belief, Defendant ORASCOM TELECOM HOLDING S.A.E. owes debts to judgment debtor PA and/or holds money and/or other property which belongs to the PA and/or in which the PA has an interest, some of which debts, money and/or property are nominally owed and payable to and/or titled under the name of THE PALESTINE INVESTMENT FUND.

3.      Plaintiffs therefore bring this action for a judgment of turnover against Defendant ORASCOM TELECOM HOLDING S.A.E., in which THE PALESTINE INVESTMENT FUND has also been named as a Defendant.

4.      Plaintiffs clarify that they were not required to name THE PALESTINE INVESTMENT FUND as a party to, or provide it notice of, this proceeding, because (as explained below) THE PALESTINE INVESTMENT FUND has no legal existence separate from judgment-debtor PA. Moreover, alternatively, even if THE PALESTINE INVESTMENT FUND is found to be an entity legally separate from the PA, its status would (at most) be that of a putatively interested party that could seek to intervene to assert claims. Plaintiffs recognize, however, that for its own protection Defendant ORASCOM TELECOM HOLDING S.A.E. would likely seek to implead THE PALESTINE INVESTMENT FUND, which procedure would unnecessarily delay this action. Thus, solely in order to streamline and

expedite this action, Plaintiffs have named "THE PALESTINE INVESTMENT FUND" as a defendant.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this matter pursuant to 18 U.S.C. §§ 2333 and 2338, 28 U.S.C. §§ 1331 and 1963, the Court's ancillary enforcement jurisdiction and the Court's equity powers.

6.     This Court has jurisdiction over Defendants pursuant to Fed.R.Civ.P. 4(k)(1) and/or 4(k)(2).

7.     The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) and (d).

## THE PARTIES

8.     Plaintiff THE ESTATE OF YARON UNGAR, which is represented in this action by a court-appointed administrator, attorney David Strachman, holds a judgment against the PA and the PLO, jointly and severally, in the amount of $2,932,158.00.

9.     Plaintiffs DVIR UNGAR and YISHAI UNGAR, minors who bring this action through their grandparents and legal guardians plaintiffs Meir Ungar, Judith Ungar, Uri Dasberg and Judith Dasberg, each hold a judgment against the PA and the PLO, jointly and severally, in the amount of $30,488,482.50.

10.     Plaintiffs PROFESSOR MEIR UNGAR and JUDITH UNGAR, who bring this action individually and in their capacity as legal guardians of plaintiffs Dvir and Yishai

Ungar, each hold a judgment against the PA and the PLO, jointly and severally, in the amount of $15,000,000.00.

11.    Plaintiffs RABBI URI DASBERG and JUDITH DASBERG bring this action in their capacity as legal guardians of plaintiffs Dvir and Yishai Ungar.

12.    Plaintiffs AMICHAI UNGAR, DAFNA UNGAR and MICHAL COHEN each hold a judgment against the PA and the PLO, jointly and severally, in the amount of $7,500,000.00.

13.    Upon information and belief, Defendant ORASCOM TELECOM HOLDING S.A.E (a/k/a "Orascom Telecom" a/k/a "OTH") (hereinafter "ORASCOM") is a corporation organized and existing pursuant to the laws of the State of Egypt.

14.    Upon information and belief, ORASCOM, itself and/or through its agents, continuously and permanently conducts extensive, substantial business in the State of New York and throughout the United States.

15.    Upon information and belief, ORASCOM, itself and/or through its agents, maintains assets within the State of New York and elsewhere in the United States.

16.    Upon information and belief, commercial and investment assets owned by judgment debtor PA are nominally titled under the name THE PALESTINE INVESTMENT FUND ("PIF") and PIF is an alias and/or shell fund of the PA.

17.    Upon information and belief, the PA, itself and/or through its agents, transacts extensive business under the name "THE PALESTINE INVESTMENT FUND" in the State of New York and throughout the United States.

18.    Upon information and belief, alternatively if the PIF is found to have cognizable legal personality separate from the PA, the PIF, itself and/or through its agents, transacts extensive business in the State of New York and throughout the United States.

19.    Upon information and belief, the PA, itself and/or through its agents, maintains assets within the State of New York and elsewhere in the United States that are nominally titled under the name THE PALESTINE INVESTMENT FUND.

## STATEMENT OF FACTS

**A.    Background**

20.    Plaintiffs are the orphaned children, parents, siblings and administrator of the Estate of United States citizen Yaron Ungar, who was murdered, along with his pregnant wife Efrat, in a terrorist machine-gun attack on June 9, 1996 in Israel.

21.    A 25 year-old New York native, Yaron was a schoolteacher studying for rabbinical ordination when he was murdered.

22.    The Ungars were ambushed while returning from a wedding.

23.    Efrat shielded their ten month-old son Yishai from the bullets and he survived the attack.

24.    The Ungars' other son Dvir, then two years old, was not in the vehicle.

25.    In March 2000, the Ungar family filed suit against the Palestinian Authority, the Palestine Liberation Organization, and other defendants, in the United States District Court for the District of Rhode Island under the Antiterrorism Act ("ATA") 18 U.S.C. § 2331 *et seq. Ungar et al. v. The Palestinian Authority et al.*, Civil Action 00-105L (D.R.I.).

26.     Section 2333(a) of the ATA creates a federal cause of action for a U.S. national, or his estate, survivors and heirs, injured by reason of an act of "international terrorism" as defined in § 2331.

27.     Section 2338 of the ATA provides that the "district courts of the United States shall have exclusive jurisdiction over an action brought under" § 2333.

28.     On July 13, 2004, the United States District Court in Rhode Island entered final judgment for the Plaintiffs and against the PA and PLO, jointly and severally, in the amount of $116,409,123.00 in damages, and for attorney's fees in the amount of $11,925.00 against the PA and $6,345.00 against PLO, and on March 31, 2005, the Court of Appeals for the First Circuit affirmed the judgment of the Rhode Island District Court. *Ungar v. Palestinian Authority*, 325 F.Supp.2d 15 (D.R.I. 2004) *aff'd* 402 F.3d 274 (1st Cir. 2005) *cert. denied sub nom. Palestine Liberation Organization et al. v. Ungar ex rel. Strachman et al.*, 126 S.Ct. 715 (2005).

29.     On May 5, 2005, the United States District Court for the District of Rhode Island entered an order finding that

> (i) Plaintiffs have presented evidence that Defendants do not intend to honor the judgment of the Court in this action, that Defendants have recently liquidated assets comprising a significant part of their overall investment portfolio, and that persons holding Defendants' assets in the United States are in the process of returning those assets to Defendants.

> (ii) Defendants are foreign entities and the dissipation of their U.S.-based assets is liable to render satisfaction of the judgment entered by this Court impossible. That judgment is intended to compensate Plaintiffs for the murder of their decedent, and Plaintiffs' inability to satisfy the judgment and receive the compensation due to them would therefore cause Plaintiffs severe and irreparable injury.

Injunction, May 5, 2005, *Ungar v. Palestinian Authority*, Civil Action 00-105L (D.R.I.).

30.     The PA and PLO have refused to satisfy Plaintiffs' judgment, and have expressly informed the Ungars' trial counsel that they "will never pay" the judgment.

31.     Plaintiffs have served several deposition notices seeking to depose officials of the PA and PLO with knowledge of the investments and assets of the PA and PLO, but the PA and PLO have refused to produce their officials for deposition.

32.     The PA and the PLO are refusing to pay the Ungars' judgment because they do not recognize the authority of this Court or of any other court of the United States.

33.     On July 15, 2005, Judge Marrero of this Court ordered the PA and PLO to pay discovery sanctions in the amount of some $19,000 previously imposed by the court in *Knox v. Palestine Liberation Organization*, Civ. No. 4466 (VM), and to answer the complaint in that action, by no later than August 15, 2005. In response to that order, the PLO and PA sent a letter to Judge Marrero on August 15, 2005, stating that:

> [T]he defendants have instructed counsel to present only their position that U.S. courts have no jurisdiction over them and not to answer on the merits . . .
>
> This same position, that the Court has no jurisdiction over them, applies to the order for defendants to pay sanctions.

Letter from Ramsey Clark to Marrero, J., August 15, 2005, *Knox v. Palestine Liberation Organization*, Civ. No. 4466 (VM).

34.     Plaintiffs have registered their judgment against the PA and PLO in this Court pursuant to 28 U.S.C. § 1963 as Docket No. 18 MS 0302.

35.     Pursuant to 28 U.S.C. § 1963, Plaintiffs' judgment now has "the same effect as a judgment of" this Court "and may be enforced in like manner", and the ancillary

subject-matter jurisdiction of this Court to enforce Plaintiffs' judgment is therefore identical to that of the United States District Court in Rhode Island that entered the judgment.

36.    Upon information and belief, Defendant ORASCOM is a telecommunications company incorporated and headquartered in Egypt.

37.    Upon information and belief, Defendant ORASCOM conducts extensive business and commercial activities throughout the United States and the State of New York, and holds assets in the State of New York and elsewhere in United States.

**B.    Defendant ORASCOM is Indebted to and Holds Assets of Judgment-Debtor PA**

38.    Upon information and belief, as of January 1, 2003, the PA made, held and owned the following direct investments in Defendant ORASCOM (collectively hereinafter: "Direct Investments"):

a.    On December 10, 2002, the PA purchased 10 million shares of Defendant ORASCOM; and

b.    As of January 1, 2003, the PA owned 2 million Global Depository Receipts ("GDR") shares of Defendant ORASCOM traded on the London stock exchange; and

c.    On an unknown date or dates prior to January 1, 2003, the PA transferred approximately $107,500,000.00 to Defendant ORASCOM as an investment, in expectation of an increase in shareholder capital which did not take place.

39.    Upon information and belief, the Direct Investments have not been repaid to the PA, and Defendant ORASCOM remains indebted to the PA for the amount of the Direct Investments.

40.    Upon information and belief, Orascom Telecom Algeria (a/k/a "Djezzy") (hereinafter: "OTA") and Orascom Telecom Tunisia (a/k/a "Tunisiana") (hereinafter: "OTT") are telecommunication companies.

41.    Upon information and belief Defendant ORASCOM owns a majority ownership interest in OTT and OTA.

42.    Upon information and belief, on an unknown date or dates, the PA acquired direct and/or indirect stakes and/or shares and/or other interests in OTA and OTT (collectively hereinafter: "PA's OTA and OTT Stakes").

43.    Upon information and belief, on an unknown date or dates, Defendant ORASCOM agreed to purchase the PA's OTA and OTT Stakes for an unknown sum totaling hundreds of millions of dollars.

44.    Upon information and belief, on an unknown date or dates in late 2004 and/or early 2005, Defendant ORASCOM purchased and acquired the PA's OTA and OTT Stakes for an unknown sum totaling hundreds of millions of dollars (hereinafter: "Defendant ORASCOM's Acquisition of the PA's OTA and OTT Stakes").

45.    Upon information and belief, as a consequence and result of, and as consideration for, Defendant ORASCOM's Acquisition of the PA's OTA and OTT Stakes, Defendant ORASCOM is indebted to and owes the PA at least tens and probably hundreds of millions of dollars.

46.    Upon information and belief, the PA carried out all of the above-described transactions and investments in its own name and/or under various aliases, and/or under the names of various shell funds, including without limitation "The Palestinian Commercial Services Corporation" (a/k/a "Palestine Commercial Services Company") ("PCSC") and "The Palestine Investment Fund" ("PIF") (collectively hereinafter: "Aliases and Shell Funds")

47.    Upon information and belief, all or nearly all of the Aliases and Shell Funds including the PCSC and PIF were created and are controlled and/or directed by Mohammed Rashid (a/k/a Mohammed Rachid a/k/a Khaled Salaam) (hereinafter: "Rashid").

48.    Upon information and belief, Rashid has managed the covert assets and investments of the PA and PLO for decades.

49.    Plaintiffs have served the PA and PLO with a notice of deposition requiring the PA and PLO to produce Rashid to provide deposition testimony regarding, *inter alia*, the investments and assets of the PA and PLO held by and/or titled to the PIF, the PCSC and the other Aliases and Shell Funds, but the PA and PLO have refuse to produce Rashid and have informed Plaintiffs that they will not do so.

50.    Upon information and belief, the PA created and uses the Aliases and Shell Funds to shield the financial activities and assets of the PA from law-enforcement and tax authorities and from creditors such as the instant Plaintiffs.

51.    Upon information and belief, the Aliases and Shell Funds are aliases and pseudonyms for the PA and have no legal personality or corporate identity separate from the PA.

52.     Upon information and belief, alternatively, any separate legal personality and/or or corporate identity formally or nominally enjoyed and/or claimed by any of the Aliases and Shell Funds is artificial and/or fraudulent and so not legally cognizable.

53.     Upon information and belief, alternatively, any separate legal personality and/or or corporate identity formally or nominally enjoyed and/or claimed by any of the Aliases and Shell Funds is intended solely to shield the financial activities and assets of the PA from law-enforcement and tax authorities and from creditors and so not legally cognizable.

54.     Upon information and belief, alternatively, any of the Aliases and Shell Funds that have cognizable legal personality or corporate identity separate from the PA, are shell entities wholly-owned and controlled by the PA with no purpose or business other than to act as investment vehicles for the PA.

55.     Upon information and belief, alternatively, any of the Aliases and Shell Funds that have cognizable legal personality or corporate identity separate from the PA, are agents and/or trustees and/or fiduciaries of the PA.

56.     Upon information and belief, alternatively, any of the Aliases and Shell Funds that have cognizable legal personality or corporate identity separate from the PA, constitute and serve as constructive and/or resulting trusts for the PA.

57.     Upon information and belief, the PIF was capitalized by the PA without consideration.

58.     Upon information and belief, all assets and property nominally titled to and/or owned by the PIF were conveyed to the PIF by the PA without fair consideration,

during the period that the PA was a defendant in the underlying action for money damages in the United States District Court in Rhode Island.

59.     Upon information and belief, none of the Aliases and Shell Funds, whether or not they have cognizable legal personality or corporate identity separate from the PA, own any property or assets of their own.

60.     Upon information and belief, any and all assets and property of any type designated or titled to, or held in, the name of the Aliases and Shell Funds, are legally, beneficially and equitably owned by the PA.

61.     Upon information and belief, any and all debts owed and/or due to, or payable in the name of, the Aliases and Shell Funds, are legally, beneficially and equitably owed, due and payable to the PA.

62.     In at least ten sworn affidavits submitted by the PA in civil proceedings pending in Israeli courts (copies of which are in Plaintiffs' possession) the PA has identified the Direct Investments in Defendant ORASCOM and the PA's OTA and OTT Stakes— specifically by name—as assets owned by the PA and available for the satisfaction of judgments against the PA (hereinafter: "PA Affidavits in the Israeli Proceedings").

63.     The PA submitted the PA Affidavits in the Israeli Proceedings in support of successful motions filed by the PA in the Israeli courts to vacate or reduce the amount of prejudgment attachments that had been imposed on the PA by the Israeli courts in those proceedings.

64.     The PA is therefore judicially estopped from contesting or opposing the instant action.

65.     Additionally and/or alternatively the PA Affidavits in the Israeli Proceedings constitute admissions dispositive of the instant action. [1]

66.     Therefore, any amounts nominally owed, due or and/or payable from Defendant ORASCOM to any of the Aliases and Shell Funds are legally, beneficially and equitably owed, due and payable to the PA, and any money or other property held by Defendant ORASCOM titled to any of the Aliases and Shell Funds, or in which any of the Aliases and Shell Funds claim an interest, constitute money, property and/or interests legally, beneficially and equitably owned by the PA.

## C.     This Court Has *In Personam* Jurisdiction over Defendant ORASCOM

### i.     Defendant ORASCOM Continuously Conducts Substantial and Extensive Business and Other Activities in New York and the United States as a Whole

67.     Defendant ORASCOM is subject to the general *in personam* jurisdiction of this Court in this action because it systematically conducts substantial business and other

---

[1]     The PIF/PA are hereby cautioned that if they file papers in this matter contradicting the sworn affidavits filed by the PA in the Israeli proceedings, Plaintiffs will (1) seek all available sanctions under Fed.R.Civ.P. 11 and other relevant provisions; and (2) deliver copies of such contradictory papers to the chambers of the Israeli judges before whom the PA filed the sworn affidavits.

The Ungars have suffered through five years of contumacious and dilatory litigation conduct at the hands of the PA and PLO, and the Court should tolerate no more. *See Ungar* 325 F. Supp. 2d at 62 (finding that the PA and PLO took "deliberate actions to delay the completion of this litigation" and "sought to delay these proceedings as long as possible," and imposing sanctions for their bad-faith conduct). *See also*, *Knox v. Palestine Liberation Organization*, 229 F.R.D. 65 (S.D.N.Y. 2005) (finding that the PLO and PA "generat[ed] more than a year's delay and thousands of dollars in legal expenses" warning that the "Court will not tolerate such practices in the future, and will consider any unexplained repetition of them sufficient grounds for imposition of sanctions on Defendants' counsel personally as well as on Defendants" and imposing sanctions of estoppel and attorneys fees).

activities in New York and across the United States on a continuous and permanent basis, and maintains contacts with New York State and the United States as a whole which are qualitatively and quantitatively sufficient for the exercise of jurisdiction under the Fifth and Fourteenth Amendments to the Constitution.

68.    Despite having been denied jurisdictional discovery from Defendant ORASCOM and its officers, Plaintiffs have obtained evidence that ORASCOM conducts and maintains a broad range of commercial and other contacts and activities in New York and throughout the United States.

69.    The categories and types of commercial and other activities and contacts conducted and maintained by Defendant ORASCOM in New York and the United States include, *inter alia*, the following:

a) ORASCOM profits directly from cellular phone calls made in New York and elsewhere in the United States by its cell phone customers, pursuant to long-term, on-going commercial partnerships and agreements with U.S.-based telecommunication companies. Under those partnerships and agreements ORASCOM's customers can and do operate their ORASCOM cellular phones in New York and elsewhere in the United States, and ORASCOM derives substantial financial benefit therefrom. Thus, ORASCOM continuously and systematically operates, conducts and profits from its cellular phone business in New York and elsewhere in the United States, exactly as it does in the Middle East;

b) ORASCOM maintains an active and on-going depository receipt program in New York;

c) ORASCOM regularly receives substantial financing and lines of credit from entities and persons in New York and elsewhere in the United States;

d) ORASCOM regularly participates in and makes presentations at conferences in New York organized by investment banks, at which Orascom meets with and solicits major institutional investors and potential business partners;

e) ORASCOM regularly participates in and/or sponsors business and economic policy conferences around the United States;

f) ORASCOM has contracted and continuously and regularly does contract with entities and persons located in New York and elsewhere in the United States for the purchase of goods and on-going provision of services;

g) ORASCOM has entered into and is currently engaged in various commercial partnerships and joint ventures with entities and persons located in New York and elsewhere in the United States;

h) ORASCOM has repeatedly and expressly agreed to submit to the jurisdiction of New York state and federal courts, in several past and current contracts to which ORASCOM is a party;

i) ORASCOM provides funding to various educational and political institutions in New York and elsewhere in the United States;

70.     Each one of the types and categories of contacts and/or activities listed above is jurisdictionally significant and cognizable.

71.     The above list of categories and types of contacts and activities is a partial and non-exhaustive list, and jurisdictional discovery from Defendant ORASCOM and

its officers will reveal additional categories and types of jurisdictionally significant contacts and activities maintained and conducted by Defendant ORASCOM.[2]

### ii.     Additionally and/or Alternatively, Personal Jurisdiction Is Established by Negative Inference and Estoppel On the Basis of Defendant ORASCOM's Conduct

72.     A defendant's obstructive, contumacious and/or recalcitrant conduct can create a negative inference and presumption establishing that its contacts in the jurisdiction are sufficient for the exercise of *in personam* jurisdiction and/or estop the defendant from disputing that it is subject to the personal jurisdiction of the court. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099 (1982).

73.     Upon information and belief, Defendant ORASCOM has engaged in at least three distinct courses of conduct that create a negative inference and presumption establishing that ORASCOM's contacts in New York and the United States as a whole are sufficient for the exercise of *in personam* jurisdiction over it by this Court, and estop ORASCOM from disputing that it is subject to the personal jurisdiction of this Court.

---

[2]     The within list enumerates only <u>general</u> <u>categories</u> and <u>types</u> of jurisdictional contacts and activities conducted by ORASCOM, and does not and does not purport to enumerate ORASCOM's <u>specific</u> contacts and activities. Plaintiffs' have uncovered multiple distinct examples of specific contacts and/or activities by ORASCOM within each and every one of the general categories and types listed above. In other words, each of the general categories and types listed above signifies not one, but rather several or many discrete contacts and activities by ORASCOM. Jurisdictional discovery from ORASCOM and its officers will reveal both additional <u>general</u> categories, and additional <u>specific</u> examples of contacts and activities within each category.

74.    First, in an effort to block Plaintiffs' attempts to obtain discovery from ORASCOM regarding its jurisdictional contacts in the United States and to convince this Court that it lacks such jurisdictional contacts, ORASCOM submitted to this Court the Declaration of Amr Esmat Abaza ("Abaza Declaration").[3]

75.    The Abaza Declaration asserts that "OTH does not do business in New York State" and "OTH does not solicit business…in New York State…." (Abaza Declaration § 7). Upon information and belief, these sweeping assertions are patently false and misleading and therefore constitute a bad-faith and unlawful attempt by Defendant ORASCOM to both (a) block Plaintiffs' efforts to obtain discovery from ORASCOM regarding its jurisdictional contacts and (b) convince this Court that it lacks such jurisdictional contacts.

76.    ORASCOM's submission of the false and misleading Abaza Declaration creates a strong inference that ORASCOM is seeking to conceal from the Plaintiffs and the Court the existence of contacts and activities that support the Court's exercise of personal jurisdiction over ORASCOM in this action.

77.    Second, upon information and belief, Defendant ORASCOM has unlawfully persuaded and/or otherwise caused ORASCOM officers Hatim El-Gammal and Zouhair Khaliq ("ORASCOM Officers") not to comply with subpoenas served upon them by Plaintiffs for the purpose of obtaining information relevant to ORASCOM's activities in the United States.

_____

[3]    The Abaza Declaration was submitted in support of the "Consolidated Reply Memorandum of Points and Authorities In Support of Nonparties Orascom Telecom Holding S.A.E.'s and Khaled Bishara's Motions to Quash Subpoenas" filed by ORASCOM in this Court under Case No. 18 MS 0302.

78.    The conduct of Defendant ORASCOM with respect to the subpoenas served on the ORASCOM Officers creates a strong negative inference that ORASCOM is seeking to conceal from the Plaintiffs and the Court the existence of contacts and activities that support the Court's exercise of personal jurisdiction over ORASCOM in this action.

79.    Additionally and/or alternatively, the refusal of the ORASCOM Officers to comply with the subpoenas creates a strong negative inference that is attributable to ORASCOM itself since, upon information and belief: (a) the ORASCOM Officers have a high degree of loyalty to ORASCOM due to their professional positions; (b) ORASCOM exercises a high degree of control over the ORASCOM Officers due to their professional positions; and (c) the refusal of the ORACOM' Officers to comply with the subpoenas advances the interests of both the ORASCOM' Officers and Defendant ORASCOM itself. *LiButti v. United States*, 107 F.3d 110, 123 (2d. Cir. 1997).

80.    Third, upon information and belief, Defendant ORASCOM has unlawfully persuaded or otherwise caused U.S.-based third-parties with whom ORASCOM conducts business ("Third Party Witnesses") not to comply with subpoenas served upon them by Plaintiffs for the purpose of obtaining information relevant to ORASCOM's activities in the United States.

81.    The conduct of Defendant ORASCOM with respect to the subpoenas served on the Third Party Witnesses creates a strong negative inference that ORASCOM is seeking to conceal from the Plaintiffs and the Court the existence of contacts and activities that support the Court's exercise of personal jurisdiction over ORASCOM in this action.

82.    Additionally and/or alternatively, the refusal of Third Party Witnesses to comply with the subpoenas creates a strong negative inference that is attributable to

ORASCOM itself since, upon information and belief: (a) the Third Party Witnesses have a high degree of loyalty to ORASCOM due to their business contacts with ORASCOM; (b) ORASCOM exercises a high degree of control over the Third Party Witnesses due to its business contacts with the Third Party Witnesses; and (c) the refusal of the Third Party Witnesses to comply with the subpoenas advances the interests of both the Third Party Witnesses and Defendant ORASCOM itself.

83.    Thus, this Court can and should find that the conduct of Defendant ORASCOM described herein creates a negative inference and presumption establishing that ORASCOM'S contacts in New York and the United States as a whole are statutorily and constitutionally sufficient for this Court to exercise *in personam* jurisdiction over ORASCOM, and estops ORASCOM from arguing otherwise.

**AS AND FOR PLAINTIFFS' FIRST CLAIM FOR RELIEF**

**TURNOVER**

**UNDER A CREDITOR'S BILL/SUPPLEMENTAL BILL**

84.    Plaintiffs repeat and reallege each of the foregoing allegations with the same force and effect as if they were more fully set forth herein.

85.    Plaintiffs are judgment-creditors of the PA.

86.    The PA is a foreign entity.

87.    The United States District Court for the District of Rhode Island has found that the PA does not intend to honor Plaintiffs' judgment, that the PA has recently liquidated assets comprising a significant part of its overall investment portfolio, that Plaintiffs' judgment against the PA is intended to compensate Plaintiffs for the murder of

their decedent, and that Plaintiffs' inability to satisfy the judgment and receive the compensation due to them would therefore cause Plaintiffs severe and irreparable injury.

88.    The PA has, moreover, expressly informed the Plaintiffs that it will never honor their judgment.

89.    The PA has openly refused to produce its officials, including Rashid, to provide deposition testimony regarding the PA's investments and assets.

90.    The PA has notified this Court that it does not recognize the jurisdiction of this or any other court of the United States over the PA.

91.    Defendant ORASCOM is indebted to judgment-debtor PA.

92.    Defendant ORASCOM holds money and/or other property belonging to judgment-debtor PA and/or in which the PA has an interest.

93.    Plaintiffs are therefore entitled to bring the instant action as a creditor's bill and/or a supplemental bill under the Court's equity powers, and to entry of an order and judgment directing Defendant ORASCOM to turnover and pay to Plaintiffs, to the extent of the full amount of Plaintiffs' judgment against the PA: (a) all debts owed by Defendant ORASCOM to the PA, however titled; and (b) all money and/or other property of the PA, or in which the PA has an interest, however titled, in the control or possession of Defendant ORASCOM.

### AS AND FOR PLAINTIFFS' SECOND CLAIM FOR RELIEF

### TURNOVER

### PURSUANT TO CPLR §§ 5225 AND/OR 5227

94.    Plaintiffs repeat and reallege each of the foregoing allegations with the same force and effect as if they were more fully set forth herein.

95.     Plaintiffs are judgment-creditors of the PA.

96.     Defendant ORASCOM is indebted to judgment-debtor PA.

97.     Defendant ORASCOM holds money and/or other property belonging to judgment-debtor PA and/or in which the PA has an interest.

98.     Plaintiffs are therefore entitled to an order and judgment pursuant to New York State Civil Practice Law and Rules ("CPLR") §§ 5225 and/or 5227 ordering Defendant ORASCOM to turnover and pay to Plaintiffs, to the extent of the full amount of Plaintiffs' judgment against the PA: (a) all sums owed by Defendant ORASCOM to the PA, however titled; and (b) all money and/or other property of the PA, or in which the PA has an interest, however titled, in the control or possession of Defendant ORASCOM.

**WHEREFORE**, the Plaintiffs demand an order and judgment against Defendants:

(i) Ordering Defendant ORASCOM to turnover and pay to Plaintiffs, up to the full amount of Plaintiffs' judgment against the PA and the statutory post-judgment interest thereon:

(a)     All debts owed, due and/or payable by Defendant ORASCOM to the PA that are titled and/or payable in the names of the PA or the PIF, including without limitation all debts owed, due or payable as a consequence and result of, and/or as consideration for, the Direct Investments and Defendant ORASCOM's Acquisition of the PA's OTA and OTT Stakes, as defined herein; and

      (b)     All money and/or other property that is titled in the names of the PA or the PIF, or in which the PA or the PIF has a titular interest, in the control or possession of Defendant ORASCOM; and

(ii)  Awarding Plaintiffs their costs, expenses, disbursements and attorney's fees in connection with this proceeding, together with such other and further relief that this Court deems just, proper and equitable.

Dated: New York, New York
       January 19, 2006

Yours,

JAROSLAWICZ & JAROS, ESQS.
*Attorneys for the plaintiffs*

by: _____
    Robert J. Tolchin (RT3713)

150 William Street, 19th Floor
New York, New York 10038
(212) 227-2780

David Strachman, Esq.
MCINTYRE, TATE, LYNCH & HOLT, LLP
*Attorneys for the plaintiffs*
321 South Main Street, Suite 400
Providence, Rhode Island 02903
(401) 351-7700

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X
THE ESTATE OF YARON UNGAR by and through its
Administrator, DAVID STRACHMAN; DVIR UNGAR,
minor, by his guardians and next friends, YISHAI
UNGAR, minor, by his guardians and next friends,
PROFESSOR MEIR UNGAR, JUDITH UNGAR,                    Case No. 05-CV-7765 (CM) (LMS)
individually and in their capacity as legal guardians of
Plaintiffs DVIR UNGAR and YISHAI UNGAR; RABBI
URI DASBERG, and JUDITH DASBERG, in their capacity
as legal guardians of Plaintiffs DVIR UNGAR and
YISHAI UNGAR; AMICHAI UNGAR; DAFNA UNGAR;              **ANSWER**
and MICHAL COHEN,

                         Plaintiffs,

                    -against-

ORASCOM TELECOM HOLDING S.A.E (a/k/a
"Orascom Telecom" a/k/a "OTH") and
THE PALESTINE INVESTMENT FUND (a/k/a
"Palestinian Investment Fund" a/k/a "Sharekat Sundouk
al-Istithmar al-Filistinee")

                         Defendants.

-------------------------------------------------------------------------- X

        Defendant The Palestine Investment Fund, by its attorneys, JAROSLAWICZ &

JAROS, answers the Plaintiffs' First Amended Complaint as follows:

        1.       Defendant The Palestine Investment Fund ("PIF") admits the allegations

contained in paragraph 1 of the First Amended Complaint.

        2.       Defendant PIF admits the allegations contained in paragraph 2 of the

First Amended Complaint.

        3.       Defendant PIF admits the allegations contained in paragraph 3 of the

First Amended Complaint.

4.    Defendant PIF admits the allegations contained in paragraph 4 of the First Amended Complaint.

5.    Defendant PIF admits the allegations contained in paragraph 5 of the First Amended Complaint.

6.    Defendant PIF admits the allegations contained in paragraph 6 of the First Amended Complaint.

7.    Defendant PIF admits the allegations contained in paragraph 7 of the First Amended Complaint.

8.    Defendant PIF admits the allegations contained in paragraph 8 of the First Amended Complaint.

9.    Defendant PIF admits the allegations contained in paragraph 9 of the First Amended Complaint.

10.    Defendant PIF admits the allegations contained in paragraph 10 of the First Amended Complaint.

11.    Defendant PIF admits the allegations contained in paragraph 11 of the First Amended Complaint.

12.    Defendant PIF admits the allegations contained in paragraph 12 of the First Amended Complaint.

13.    The allegations contained in paragraph 13 of the First Amended Complaint are directed at Defendant Orascom Telecom Holding S.A.E. ("Orascom") and do not require an answer by Defendant PIF.

14.    The allegations contained in paragraph 14 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

2

15.     The allegations contained in paragraph 15 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

16.     Defendant PIF admits the allegations contained in paragraph 16 of the First Amended Complaint.

17.     Defendant PIF admits the allegations contained in paragraph 17 of the First Amended Complaint.

18.     Defendant PIF admits the allegations contained in paragraph 18 of the First Amended Complaint.

19.     Defendant PIF admits the allegations contained in paragraph 19 of the First Amended Complaint.

20.     Defendant PIF admits the allegations contained in paragraph 20 of the First Amended Complaint.

21.     Defendant PIF admits the allegations contained in paragraph 21 of the First Amended Complaint.

22.     Defendant PIF admits the allegations contained in paragraph 22 of the First Amended Complaint.

23.     Defendant PIF admits the allegations contained in paragraph 23 of the First Amended Complaint.

24.     Defendant PIF admits the allegations contained in paragraph 24 of the First Amended Complaint.

25.     Defendant PIF admits the allegations contained in paragraph 25 of the First Amended Complaint.

26.     Defendant PIF admits the allegations contained in paragraph 26 of the First Amended Complaint.

27. Defendant PIF admits the allegations contained in paragraph 27 of the First Amended Complaint.

28. Defendant PIF admits the allegations contained in paragraph 28 of the First Amended Complaint.

29. Defendant PIF admits the allegations contained in paragraph 29 of the First Amended Complaint.

30. Defendant PIF admits the allegations contained in paragraph 30 of the First Amended Complaint.

31. Defendant PIF admits the allegations contained in paragraph 31 of the First Amended Complaint.

32. Defendant PIF admits the allegations contained in paragraph 32 of the First Amended Complaint.

33. Defendant PIF admits the allegations contained in paragraph 33 of the First Amended Complaint.

34. Defendant PIF admits the allegations contained in paragraph 34 of the First Amended Complaint.

35. Defendant PIF admits the allegations contained in paragraph 35 of the First Amended Complaint.

36. The allegations contained in paragraph 36 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

37. The allegations contained in paragraph 37 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

38. Defendant PIF admits the allegations contained in paragraph 38 of the First Amended Complaint.

4

39.     Defendant PIF admits the allegations contained in paragraph 39 of the First Amended Complaint.

40.     Defendant PIF admits the allegations contained in paragraph 40 of the First Amended Complaint.

41.     Defendant PIF admits the allegations contained in paragraph 41 of the First Amended Complaint.

42.     Defendant PIF admits the allegations contained in paragraph 42 of the First Amended Complaint.

43.     Defendant PIF admits the allegations contained in paragraph 43 of the First Amended Complaint.

44.     Defendant PIF admits the allegations contained in paragraph 44 of the First Amended Complaint.

45.     Defendant PIF admits the allegations contained in paragraph 45 of the First Amended Complaint.

46.     Defendant PIF admits the allegations contained in paragraph 46 of the First Amended Complaint.

47.     Defendant PIF admits the allegations contained in paragraph 47 of the First Amended Complaint.

48.     Defendant PIF admits the allegations contained in paragraph 48 of the First Amended Complaint.

49.     Defendant PIF admits the allegations contained in paragraph 49 of the First Amended Complaint.

50.     Defendant PIF admits the allegations contained in paragraph 50 of the First Amended Complaint, and further states that the new owners, directors and managers of the PIF intend to put an end to such conduct.

51.     Defendant PIF admits the allegations contained in paragraph 51 of the First Amended Complaint, and further clarifies that, purely as matter of fact, the PIF and the PCSC have been registered as corporations by the Palestinian Authority, but that their corporate form can be disregarded, if necessary, as a matter of law.

52.     Defendant PIF admits the allegations contained in paragraph 52 of the First Amended Complaint.

53.     Defendant PIF admits the allegations contained in paragraph 53 of the First Amended Complaint.

54.     Defendant PIF admits the allegations contained in paragraph 54 of the First Amended Complaint.

55.     Defendant PIF admits the allegations contained in paragraph 55 of the First Amended Complaint.

56.     Defendant PIF admits the allegations contained in paragraph 56 of the First Amended Complaint.

57.     Defendant PIF admits the allegations contained in paragraph 57 of the First Amended Complaint.

58.     Defendant PIF admits the allegations contained in paragraph 58 of the First Amended Complaint.

59.     Defendant PIF admits the allegations contained in paragraph 59 of the First Amended Complaint.

60.    Defendant PIF admits the allegations contained in paragraph 60 of the First Amended Complaint.

61.    Defendant PIF admits the allegations contained in paragraph 61 of the First Amended Complaint.

62.    Defendant PIF admits the allegations contained in paragraph 62 of the First Amended Complaint.

63.    Defendant PIF admits the allegations contained in paragraph 63 of the First Amended Complaint.

64.    Defendant PIF admits the allegations contained in paragraph 64 of the First Amended Complaint.

65.    Defendant PIF admits the allegations contained in paragraph 65 of the First Amended Complaint.

66.    Defendant PIF admits the allegations contained in paragraph 66 of the First Amended Complaint.

67.    The allegations contained in paragraph 67 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

68.    The allegations contained in paragraph 68 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

69.    The allegations contained in paragraph 69 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

70.    The allegations contained in paragraph 70 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

71.    The allegations contained in paragraph 71 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

72.     The allegations contained in paragraph 72 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

73.     The allegations contained in paragraph 73 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

74.     The allegations contained in paragraph 74 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

75.     The allegations contained in paragraph 75 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

76.     The allegations contained in paragraph 76 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

77.     The allegations contained in paragraph 77 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

78.     The allegations contained in paragraph 78 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

79.     The allegations contained in paragraph 79 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

80.     The allegations contained in paragraph 80 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

81.     The allegations contained in paragraph 81 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

82.     The allegations contained in paragraph 82 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

83.     The allegations contained in paragraph 83 of the First Amended Complaint are directed at Defendant Orascom and do not require an answer by Defendant PIF.

84.    In answer to the allegations contained in paragraph 84 of the First Amended Complaint Defendant PIF repeats and realleges each of the foregoing answers with the same force and effect as if they were more fully set forth herein.

85.    Defendant PIF admits the allegations contained in paragraph 85 of the First Amended Complaint.

86.    Defendant PIF admits the allegations contained in paragraph 86 of the First Amended Complaint.

87.    Defendant PIF admits the allegations contained in paragraph 87 of the First Amended Complaint.

88.    Defendant PIF admits the allegations contained in paragraph 88 of the First Amended Complaint.

89.    Defendant PIF admits the allegations contained in paragraph 89 of the First Amended Complaint.

90.    Defendant PIF admits the allegations contained in paragraph 90 of the First Amended Complaint.

91.    Defendant PIF admits the allegations contained in paragraph 91 of the First Amended Complaint.

92.    Defendant PIF admits the allegations contained in paragraph 92 of the First Amended Complaint.

93.    Defendant PIF admits the allegations contained in paragraph 93 of the First Amended Complaint.

94.    In answer to the allegations contained in paragraph 94 of the First Amended Complaint Defendant PIF repeats and realleges each of the foregoing answers with the same force and effect as if they were more fully set forth herein.

9

95.    Defendant PIF admits the allegations contained in paragraph 95 of the First Amended Complaint.

96.    Defendant PIF admits the allegations contained in paragraph 96 of the First Amended Complaint.

97.    Defendant PIF admits the allegations contained in paragraph 97 of the First Amended Complaint.

98.    Defendant PIF admits the allegations contained in paragraph 98 of the First Amended Complaint.

99.    Defendant PIF consents to all the relief sought by the Plaintiffs in the First Amended Complaint.

Dated: New York, New York
          October 24, 2006

Yours,

JAROSLAWICZ & JAROS, ESQS.
*Attorneys for Defendant*
*The Palestine Investment Fund*

by: _____
          Robert J. Tolchin (RT 3713)

150 William Street, 19th Floor
New York, New York 10038
(212) 227-2780